# West Chicago Street Railway Company and North Chicago Street Railway Company v. Ezra F. Annis.

1. JUDGMENT—*Considered as a Unit.*—A judgment against two defendants must be set aside if the evidence does not warrant a finding against each. A judgment is a unit and must fall as to all if not maintainable against each.

2. NEW TRIALS—*Improper Conduct of Counsel.*—The court quotes in full the remarks of counsel in argument and holds that, though subject to criticism, it is of the opinion they had no effect upon the jury, etc.

3. RAILROAD COMPANIES—*Liability for Negligence.*—A railroad company can not avoid liability for negligence by showing that by the terms of a city ordinance it had permission or was required to lay its tracks upon particular lines.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

## STATEMENT OF THE CASE.

This was an action on the case brought against the appellants by Annis, for injuries sustained May 11, 1892.

In the first count of the declaration Annis alleges that each of the appellants so negligently moved and operated their cars on Randolph street, at the crossing of Clark street, that he was caught between them and had his shoulders crushed and his collar bones broken.

In the second count, Annis alleges the negligent construction of the tracks and operation of the appellants' roads so close together, that when he was caught between them, he was crushed and his bones broken; that the cars were drawn

in opposite directions on the parallel tracks, which was neg-ligence on the part of appellants.

The appellants pleaded the general issue. A trial was had, resulting in a verdict for $15,000 in favor of Annis. Judgment was entered upon the verdict, and this appeal taken.

The undisputed facts in the case are, that on May 11, 1892, the appellee, who was going north on Clark street at about 11 o'clock A. M., was caught between an east bound Randolph street car belonging to the West Chicago Street Railroad Company, and a west bound Clybourn avenue train belonging to the North Chicago Street Railroad Company, and rolled around and crushed; that the tracks of these two railroad companies at this point are three feet four and one-half inches apart, and from the outside rails to the curbs about seventeen feet; that the cars of the two companies are only ten and seven-eighths inches apart when passing each other on these tracks in opposite directions; that the cars between which Annis was crushed were box-cars; that the team attached to the east-bound horse-car was on a trot, and that the other car was going at the usual rate of speed.

Appellee's testimony as to the manner of the accident was as follows:

"The 11th of May, 1892, I went down in the city to the postoffice, doing some business there; it was about half-past ten that I was in the postoffice; I left the postoffice in the forenoon. I was at the corner of Randolph and Clark streets that day. I approached that corner on the east side of Clark street from the postoffice, going north on Clark street on the east side. I walked on the east side of Clark street north from the postoffice to the corner of Randolph and Clark. When I got to the southeast corner I couldn't get across the street at that time. There was quite an ob-struction from the teams and traffic going in different ways in the street, and I waited a few minutes, until the obstruc-tions were cleared away, and until I concluded I had a rea-sonable opportunity to cross the street without interfering with anybody or anybody interfering with me. I waited

on the southeast corner, on the east side of Clark street and the south side of Randolph street on that southeast corner. There was quite a jam of teams in the street there at that time; it was a very busy hour of the day, and there were several people came there at that time, and I suppose were trying to cross the street. Some stepped through between the teams, and dodged away across the street. There were two or three large stake trucks, loaded with boxes, going east on Randolph street on the horse-car tracks. There were also some trucks going south on Clark street as they could get through; one team passed the other. When the trucks had all passed east on Randolph street the last truck came on, and it was a high stake truck loaded with boxes. I stepped past the rear end of that. Just as that passed east on Randolph street there was also a big truck passed south on Clark street shutting off my view west on Randolph street, and seeing nothing in sight and knowing that the teams had passed the other way, I stepped past the rear end of this truck to pass across Randolph street. As I stepped past the end of it, the tracks being very close together, I stepped onto the cable track. There was a cable train right close to me. I suppose within two feet. Some one hollered, I don't know who it was; I presume it was the gripman. I jumped back out of the way of the grip. As I done so, there was a team crowded past me, on the other side attached to a horse-car and hemmed me in between the two, and before I had any time to turn or make any effort to save myself, I was caught between the cars. As the car struck me, one moving one way and one the other, they rolled me around. That was the only thing I suppose, that saved my life. Every time they turned me round, they would crush me together. That is all I can tell you about how it occurred.

At the time I was caught between the cars I was on the cross-walk between the south side of Randolph street and the north side—on the east side of Clark street, at the crossing going up on the east side of Clark street, and across the street there. The car which these horses were attached to

was on a trot.   I could not be able, I think, to state the
speed they were traveling at.   They trotted as a team usu-
ally does that is attached to a horse-car.   They caught me
very suddenly, and I saw they were moving rapidly, faster
than a walk, and before I had time to do a great deal of
calculating, I was caught between the cars.   The cable was
a Clybourn avenue grip train of the North Chicago Street
Railroad Company, and the other was a West Chicago
Street Railroad car."

Egbert Jamieson and John A. Rose, attorneys for appel-
lants.

Cruikshank & Atwood, attorneys for appellee.

Mr. Justice Waterman delivered the opinion of the
Court.

Appellee stepped immediately in front, within two
feet, of a moving grip car.   There is nothing to show that
the gripman had any notice of appellee's presence or inten-
tions until he suddenly appeared in front of his car, and
then at once jumped back.

Nor is there any evidence that the grip car was moving
at an improper or negligent speed; or that there was any
neglect on the part of the gripman in endeavoring to stop
his car, so soon as he became aware of the presence of ap-
pellee; in brief, so far as the movement of the grip car is
concerned, no negligence of the North Chicago Street Rail-
way Co. is shown, unless it be in the manner in which the
road was operated, so far as passing the cars of another road
at this crossing is concerned.

Appellee was not a passenger, and neither of appellants
owed to him any duty other than that which they each owe
to all persons in the street.

The mere presence in the street of the tracks of these
companies did not cause the injury to appellee.   He was in-
jured because of something done upon these tracks.   Was,
he exercising ordinary care, and were appellants, or either of

them, negligent, and by reason of such negligence was appellee injured, were questions submitted to the court below. The judgment in this case is against both of the companies, and must be set aside if the evidence did not warrant a finding against each; for a judgment is a unit, and must fall as to all if not maintainable against each. Black on Judgments, 211; Thomas v. Lowry, 60 Ill. 512; Williams v. Chalfand, 82 Ill. 218; Kimball v. Tanner, 63 Ill. 519. The ground upon which a recovery was sought not being that appellants were negligent in the placing of their tracks, although the position occupied by them may have been in obedience to any requirement of an ordinance of the city, the court should not have permitted the same to be proven.

The following occurred during the argument before the jury. Counsel for appellee said: "But I want to call your attention to one fact, gentlemen, and that is this: that if the railroad company had put those tracks as far apart as they should have put them, and as far apart as those tracks are on Clark street, right here, it wouldn't make any difference how many people stood on the tracks between them, they would never have their shoulders crushed and their collar bones broken. And I say it is the duty of that railroad company, with all the privileges that they are granted by the city of Chicago, controlling almost everything that there is in the city, going over there, as you might say, owning council, body, soul and breeches, and getting anything they mind to out of the city council—owning the town—that they ought, at least, to pay some regard to the public."

MR. JOHNSON: "I object to that."

THE COURT: "Yes, that is improper. There is nothing in the evidence here, and the jury will disregard the remarks of counsel; the last remarks of the counsel, I mean, which were not covered by the evidence.'

MR. ATWOOD: "But the company has these privileges."

MR. JOHNSON: "No, he said they owned the whole city council."

MR. CRUICKSHANK: "We withdraw it."

West Chicago Street Ry. Co. v. Annis.

Mr. Johnson: "You have said it now, and if it has any influence on any man in the jury, we have got the benefit of it."

Mr. Cruickshank: "Well, that is withdrawn."

Mr. Atwood: "Perhaps, gentlemen, I should say that the estimable gentlemen who constitute the North and West Side companies, who own the stock in those companies, have by various ordinances in times past acquired privileges and rights and opportunities to lay their tracks in the public streets of the city of Chicago—privileges and rights which you jurymen and I know as an individual are worth, you and I can't tell how much."

Mr. Johnson: "I object."

"So, I say, if Mr. Annis' story is correct, there is negligence on the part of the driver of the North Chicago cable train; in fact, he did not stop that car when he saw that man trapped in between there. He could have stopped the car if he was attending to his business. If he had the car absolutely under control, as you have seen them, with the brake ready to be set, he could have stopped that train. He knew, as another thing, better than almost anybody else could know, just how far apart these cars were as they passed this crossing, and just how many feet apart they were from Dearborn street to La Salle. For that reason he should have been extremely careful in this Clark street crossing. Now, let's look at it. That is one of the most dangerous crossings on the road. This Clark street crossing is the only crossing where the tracks are so close together. Over on Dearborn street there is a curve in there which they come around; here at La Salle street there is a curve into the tunnel. The only place where they are so close together and cross another thoroughfare and another street is that particular point, and it is the most dangerous point in the operation of the road. The most dangerous point is there, and if the driver of that grip-car had his train under his control—had his hand on the brake, as he should have had, I assert that he could have stopped that car in going eight or ten feet, and eight or ten feet is not more

than the distance of from the front end of the grip back to the body of the car. The fact of the matter is, that that driver didn't know it; didn't see it, or, for some reason or other, didn't have the car under his control, and therefore didn't stop the car, but went right straight ahead."

⁂    ⁂    ⁂    ⁂    ⁂    ⁂

" Oh, no, Mr. Policeman thinks too much of his carcass to do anything of the kind, and there is not a man on this jury that would try to do it under any circumstances; go down there and try to stand between those two cars as they passed in opposite directions. What else does he say? He says that his interest in this case is, that he didn't want to have to report that he was the cause, in any indirect manner, of this injury. That is one of his motives in this case; outside, perhaps, of standing in with the railroad company—perhaps. We all know what the policemen are down town. They don't want to get one of these big railroad companies down on them, for it is a very easy thing for these railroad companies to take his head off, just like that." (Counsel snaps his fingers.)

MR. JOHNSON : " If the court please, I desire the record to show that I object to these remarks."

MR. ATWOOD : " He told you on the stand, that accidents that occurred on a crossing under his care were chargeable to him in his department. There isn't any doubt about that; that is the way the record is kept. The man is sent there to see that there are no accidents; to see that nothing of this kind occurs.

I don't like to say anything against an officer, I don't like to say anything against a policeman, but we all have to confess this, that through their constant association with police courts and such places, and arresting men and taking them in, they some way or other get the idea that the end justifies the means, and if they want to make a thing appear so and so, they make the testimony to conform to it, and, fortunately or unfortunately, it is nevertheless the fact that there are a great many policemen who do not appear to respect the obligation of an oath."

West Chicago Street Ry. Co. v. Annis.

Restricted as is the trial judge in this State as to the matter and manner of giving instructions, the only really effective means he has for restraining counsel within the limits which are essential to a proper and fair hearing and consideration of a case, is by the power to grant a new trial when attorneys flagrantly overstep the mark.

It is not an excuse for objectionable appeals and comments that they are made in an opening argument, to which a reply can be made. Such excuse is merely to say that counsel may waste the time of the court and distract the attention of jurors by a discussion wholly immaterial to the issue to be tried, and such practice, if permitted, must result in verdicts being obtained, not upon the evidence, but upon assertions not only unwarranted, but entirely foreign to the case on trial.

A majority of the court are of the opinion that negligence of each of appellants was shown and that as a result of the negligence of each, appellee, while in the exercise of ordinary care, was injured.

The judgment of the Superior Court is therefore affirmed.

Mr. Justice Shepard :

The meeting, while both were in rapid motion, of the trains of the two companies upon tracks so close together as the evidence disclosed, at a crowded street crossing in the heart of a great city, made a question for the jury whether that was not a necessarily dangerous operation of the roads of the two companies, and therefore negligence of itself, from which neither company can escape liability for.

The admission of the ordinance which was offered in evidence, but refused, could not change that result. A railroad company can not avoid liability for negligence by showing that by the terms of a city ordinance it had permission, or was required, to lay its tracks upon particular lines. The liability here is not because of the tracks being laid close together, but because of the negligent operation of the roads at a street crossing upon tracks so laid. As to the remarks of counsel in argument, though subject to criticism, I do not

think they had any effect upon the jury, followed, as they were, by what was said by the court.

MR. PRESIDING JUSTICE GARY:
I concur in what Judge Shepard has written on the question of negligence.

My inclination is that a new trial should have been granted, because of the language of the attorney of the appellee, which Judge Waterman has quoted, but I do not feel warranted in acting upon that inclination in view of Seibert v. People, 143 Ill. 571, and therefore concur.