## Chicago City Railway Company v. John Barron.

1. NEW TRIALS—*Improper Conduct of Counsel.*—It is improper conduct in counsel, when moving to exclude testimony which a witness has given, to characterize it as "scandalous and infamous." Such, indeed, it may really be, but there is no necessity at such a time for so speaking of it. The witness is where he is because the law requires it, and while

in a place from which he can not resent insulting things said to or of him, he is entitled to the protection of the court.

2. SAME—*Improper Remarks of Counsel.*—When the counsel for the plaintiff during the progress of a trial insisted upon accusing the agents of the defendant of bribery of witnesses, and repeatedly referred to the defendant's witnesses while upon the stand as paid witnesses, and this after the court had repeatedly informed him that there was no evidence that any witnesses had been paid, and while a witness for the defendant was being examined, expressed the opinion that he had no doubt the defendant had twenty or thirty in its employ, that no doubt the court room was filled with them, and the streets swarming with them, and that he could not cope with him, that the counsel for the defendant employed these detectives and therefore vouched for them, *held* improper. Verdicts obtained by such conduct can not be sustained.

3. WITNESS—*Entitled to the Protection of the Court.*—A witness, while he may be made to testify to facts which show the business which he follows to be nefarious, or his life to be disreputable, is not in the course of his examination to have his life characterized by counsel as disreputable or wicked, and the instances are exceeding rare in which, while a witness is upon the stand, it is proper in a discussion carried on with the court to speak offensively of the life and character of a witness.

4. SAME—*Rights upon the Witness Stand.*—Each person who is called as a witness, whether high or low, rich or poor, of good or ill repute, of an orderly or dissolute life, while upon the witness stand has an absolute right to respectful treatment.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Declaration in case; plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1894. Reversed and remanded. Opinion filed February 12, 1895.

APPELLANT'S BRIEF, WM. J. HYNES, ATTORNEY; BLEWETT LEE, AND F. H. CULVER, OF COUNSEL.

It may be said that the statements of counsel are not evidence; that the court is bound to so instruct the jury; and they are sworn to render their verdict according to the evidence. All this is true; yet the necessary effect is to bring the statements of counsel to bear upon the verdict with more or less force; and if they, in the slightest degree, influence the finding, the law is violated and the purity and impartiality of the trial tarnished and weakened. It is unreasonable to believe that the jury will wholly disregard them; they may struggle to do so and may think they have

done so, and still be led involuntarily to shape their verdict under their influence. That influence will be greater or less according to the character of counsel, his skill and adroitness in argument, and the force and naturalness with which he is able to connect the fact he states with the evidence of the case. To an extent not definable, yet dangerous, they unavoidably operate as evidence which must more or less influence the jury, not given under oath, without cross-examination, and irrespective of all those precautionary rules by which competency and pertinency are tested. Tucker v. Henniker, 41 N. H. 317; Nelson v. Welch, 115 Ind. 270.

BRANDT & HOFFMAN and L. P. WILCOX, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The undisputed facts in this case seem to be that the plaintiff, at that time a butcher in the service of Armour & Company at the Stock Yards, on the 21st of February, 1891, in company with William A. Hilton, Sadie Hilton, Ida Pflum, and James J. Farrell, attended in the evening the Alhambra theater on State street near Archer avenue; that during the evening the plaintiff visited the bar room and there drank two or three times; that he was sick while in the theater and vomited in his seat; as he testifies, during the last act he swallowed some tobacco that gagged him and caused him to throw up, and that he only threw up once. Several witnesses testify that he was drunk; none say he was not. He testifies that he was not intoxicated, but that he went out of the theater, and as they were walking, Hilton, who was behind him, hit him on the heel with his toe, and that he, plaintiff, fell on the sidewalk; that after that he started tussling with Hilton in a friendly manner on the sidewalk, and that this continued for a short time until some one came up and said "you had better quit tussling like this or you will get arrested," and so they stopped; that at the corner of Dearborn street he and Ida

Pflum, whom he speaks of as "Maggie Burns," Sarah Hilton, Mary Hilton and Will Hilton got onto a horse car; that he took out a cigar to smoke and the conductor told him to go back to the other platform; so he and Hilton went to the front platform. While upon the front platform he fell, or was pushed off the car, and, as a consequence, seriously injured.

As to whether the driver of the car, without provocation, pushed or threw the plaintiff off of the car, or whether he in drunken sport or malice seized hold of the driver and in the scuffle that ensued fell off the car, without the fault of the driver, was the chief matter of contention in the trial below.

According to the testimony of some of the plaintiff's witnesses, the plaintiff and Hilton, his companion, were standing quietly and inoffensively upon the front platform, not having annoyed, insulted, or assaulted any one, when the driver of the car seized Hilton's hat and threw it off. Hilton then got off the car to get his hat. The plaintiff testifies that the driver kicked Hilton off. Be this as it may, the plaintiff and some of his witnesses testify that Hilton's hat being thrown off, and he being off after it, the plaintiff asked the driver to stop and let Hilton on; that the driver replied he " would stop his car for no drunken son-of-a-bitch," and then threw the plaintiff off the car.

The plaintiff testifies that he did not strike or push against the driver or anybody else, nor use any offensive language; that he merely said to the driver that Hilton was his friend and asked him to stop for him; that in response to this the driver said he "would stop for no drunken son-of-a-bitch," and pushed him, plaintiff, off the car.

The plaintiff testifies that while he and Hilton were on the front platform they were just joking and fooling around; that they did not do any harm of any kind; that he noticed Hilton's hat was off, and when he looked around toward him he saw the driver kick Hilton off the car.

The driver testifies that both Hilton and the plaintiff were drunk; that when they first came out, one of them made use of insulting language toward him, to which he replied,

whereupon they each grabbed hold of him; that he at that time had hold of the lines with one hand and the brake with the other; that when they clinched him, he turned around and they were all in a clinch and all fell off the car in a bunch; that he was pulled off the car by the plaintiff and Hilton.

The driver, in his statement of the affair, is corroborated by three witnesses who were on the front platform at the time.

The jury returned a verdict for the plaintiff of $25,000.

If the plaintiff and two of his witnesses are to be believed, the driver of the street car made a most wicked assault upon the plaintiff under, for such an affair, most extraordinary circumstances. The assault, according to the plaintiff, was of such a nature that had the plaintiff been killed the driver would have been guilty of homicide; and without reference to results, according to the plaintiff's testimony, the assault was such that it indicated upon the part of the driver a malignant and abandoned heart.

There is nothing, other than the testimony concerning this assault, to show that the driver was of a debased and brutal nature, or a person who would willingly and willfully inflict a great and cruel wrong upon another. So far as appears he was a laboring man, earning his living in an honorable way, and possessed of that fair character which, in the absence of evidence to the contrary, the law presumes each person has. If, therefore, he did, without provocation, make so extraordinary and wicked an assault as the plaintiff testifies to, he did a thing which is entirely out of the range of the ordinary conduct of individuals.

The injury to the plaintiff was not, according to his testimony, in truth, the result of an accident, but rather of a malignant and wicked assault, made not only without anything tending toward justification, but without the least provocation. In this case is involved, therefore, not merely the question of the right of the plaintiff to recover from the defendant, the Chicago City Railway Company, but also an understanding of the character of the driver of this car, who, if the testimony of the plaintiff is true, is a person

unworthy of employment in any position involving trust—unworthy of employment by anybody, and who ought, long ere this, to have been sent to the penitentiary for the wicked and malignant assault he, on the 21st of February, as is said, made upon the plaintiff.

The case was therefore one which, under the strongly conflicting testimony, ought to have been tried with calmness, judicially, with an honest and earnest endeavor to ascertain the truth, for in this case something more is involved than mere dollars and cents.

Many improper things occurred during the trial which were well calculated to excite and inflame the jury against the defendant, to prejudice their minds, and prevent them from calmly considering the evidence as it was their duty to do. The agents of the defendant were accused of bribing witnesses. The witnesses put upon the stand by the defendants were, during the hearing of the evidence, repeatedly referred to by the plaintiff's counsel as "paid witnesses," and this, after the court had repeatedly informed counsel that there was no evidence that any witnesses had been paid. While a witness for the defendant was being examined, counsel for the plaintiff expressed the opinion that he "had no doubt the defendant had twenty or thirty detectives in their employ, that he had no doubt the court room was filled with them, and that the street was swarming with them, and that the plaintiff could not cope with them; that counsel for the defendant employed these detectives and therefore vouched for them."

To quote all of the remarks made by counsel for the plaintiff during this trial which we deem highly improper, would occupy too much space and serve no good purpose. It is sufficient to say that each person who is called as a witness, whether high or low, rich or poor, of good or ill repute, of an orderly or dissolute life, has, while upon the witness stand, an absolute right to respectful treatment. The witness is there, not simply of his own accord, but at the command of the law, and counsel have no right while he is upon the stand, to treat him otherwise than if he was the highest gentleman in the land.

Counsel may think, and it may be the case, that the business which the witness follows is nefarious, or his life disreputable, but the witness, while he may be made to testify to facts which show such to be the case, is not in the course of an examination, to have his life characterized by counsel as disreputable or wicked, and the instances are exceedingly rare in which, while a witness is upon the stand, it is proper in discussion carried on with the court, to speak offensively of the life and character of such witness.

Nor ought counsel, in moving to exclude testimony which a witness has given, to characterize it as "scandalous and infamous;" such, indeed, it may really be, but there is no necessity at such a time for so speaking of it. The witness is where he is because the law requires it, and while in a place from which he can not resent insulting things said to or of him, he is entitled to the protection of the court. As we have before said, counsel will not indulge in such conduct if they understand that verdicts thus obtained will not be sustained. West Chicago Street Ry. Co. v. Graham, 51 Ill. App. 413.

If, upon the evidence, the right of the plaintiff to the recovery which he has obtained were clear, many uncommendable things that occurred upon the trial might be passed over; but in this case, in which the testimony is most conflicting, and in which the statement of what the driver of the horse car did is so extraordinary, we can not sustain the verdict and judgment rendered without feeling that the evidence has not had such attentive and calm consideration as the merits of the controversy demand.

The judgment of the Circuit Court is reversed and the cause remanded.