## 584    Appellate Courts of Illinois.

## Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Henry Warren.

1. New Trials—*Misconduct of Counsel.*—Improper methods of trying causes are not tolerable, and the only corrective is for counsel to know that by such methods they imperil whatever verdicts they may obtain.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. James Goggin, Judge, presiding. Heard in this court at the March term, 1896. Reversed and remanded. Opinion filed June 11, 1896.

Geo. Willard, attorney for appellant.

George E. Cramer and Duncan & Gilbert, attorneys for appellee.

Mr. Presiding Justice Gary delivered the opinion of the Court.

Whether the appellee has a meritorious cause of action against the appellant, or is endeavoring to perpetrate a gross fraud upon it, is a question upon which it is not improbable that the verdict of a jury, after a fair trial, would be conclusive; but not after such a trial as is shown by this record.

Among the reasons assigned by the appellant on its motion for a new trial, were these:

" 6. The court erred in its rulings, and each of them, in respect to the kind and character of defendant's testimony, and as to the mode, manner and order of introducing defendant's testimony.

9. The court erred in making, in the presence and hearing of the jury, disparaging remarks concerning the defendant, its agents, witnesses and attorneys, and each of them.

10. The court erred in allowing without disapproval disparaging remarks of plaintiff's counsel concerning the defendant, its agents, witnesses and attorneys, and each of them."

We shall put into this opinion only enough of the case to show the pertinency of those reasons.

Premising that Mr. Duncan was attorney for the appellee (plaintiff), and Mr. Willard for the appellant (defendant), the following is taken from the abstract.

In the opening of the case to the jury, Mr. Duncan, Mr. Willard and the court spoke as follows:

" Mr. Duncan: The history of this case has been one of continual persecution to the plaintiff. Not later than the close of last week this man was brought to Anderson, Indiana, to take the depositions of three witnesses, and after he had incurred the expense of going there and securing a local attorney to assist him, not a witness showed up, not a single soul.

Mr. Willard: I object to that statement.

The Court: Go on and make any statement you please, so far as it is not attacking the character of some person— anything you hope to prove. The objection is overruled.

Exception by defendant.

The Court: If a statement is made that can not be supported, the jury can take it into consideration after the evidence is in, but what may be said by counsel in their opening speeches, unless the character of an individual is attacked, is totally foreign to the case. I will let in everything of the kind. You can make your objections and I will rule on them.

Mr. Duncan: And I want to call your attention to a fact that will appear, not by reason of anything I say, but will appear from their own depositions now on file in this case; as a sample of how things have been conducted, a man named William Fitzgerald acted, first, as a man alleged to occupy the impartial position of commissioner in the taking of depositions, and then turned up, a week after that, as one of their own examining lawyers in the taking of depositions.

Mr. Wilson: I object.

Objection overruled; exception by defendant.

Mr. Duncan: It is proper that the jury should be placed

in the possession of these facts, both to enable you to reach correct results in this case and upon the higher ground' that no single, humble individual of any community in Illinois should be crushed by an organized aggregation of force against him.

Mr. Willard : I object.

The Court: You must not interrupt any more, Mr. Willard. You may at the termination ask me to strike out, but don't interrupt any more. Your objection is overruled.

Exception by defendant."

On the trial the following occurred :

" Deposition of B. W. Hobson read in evidence, as follows :

Direct examination by C. C. Murray.

Age forty-nine years; residence North Vernon, Jennings county, Indiana, about twelve years. Am in the undertaking business, about ten years. I know Henry Warren, the plaintiff in this cause; I have known him ever since he came to North Vernon; saw him every few days.

Q. Were you acquainted with the general reputation of Henry Warren in the neighborhood in which he lived, when he resided in the city of North Vernon, for truth and veracity ? A. I was.

Q. Was that good, or bad ? A. Bad.

Mr. Duncan : In this deposition, your honor, I wish to call your attention to the fact that by reason of the manner in which Mr. Fitzgerald conducted himself the plaintiff and counsel refused to have anything to do with Fitzgerald.

Mr. Willard : I object to that.

The Court : Take your exception. I can not rule on it.

Mr. Willard : I will except. I hope your honor does not intend to insinuate that we have omitted anything. I have read the entire deposition of the witness.

Mr. Duncan : Read what I called your attention to.

The Court : · Read the whole of the deposition.

Mr. Willard : I have read the whole of the deposition.

The Court : Let me see the deposition.

(Deposition handed the court.)

The Court: That certainly was not read. Read it to the jury, of course. It is part of the deposition.

Mr. Duncan: 'Thereupon the commissioner herein was given to understand and was informed by plaintiff and his counsel that they would produce no other witness to be examined on the part of the plaintiff herein, and plaintiff by his counsel notified the commissioner that plaintiff would not attend in person or by counsel in the taking of further depositions.'

The Court: That is a material part of the deposition. It was signed by the commissioner and should be read.

Mr. Willard: A little further on it will be found that notwithstanding this, the parties did come in.

The Court: When the depositions are read, they must be read as a whole.

Mr. Willard: Of course; and if I have not done it, let counsel show it. The insinuation is an unjust one.

The Court: You did not read that part.

Mr. Willard: It was no part of the witness' deposition.

The Court: You did not read that part, and it has the signature of the commissioner.

Mr. Willard: I take exception to your honor's remarks.

The Court: You may do that."

That deposition, with others on the part of the appellant, was taken before William Fitzgerald, Commissioner.

Closing argument of Mr. Duncan, on behalf of plaintiff:
* * * "You saw here the witnesses come on the stand, and come to cross-examine them in the plainest way and get hold of the truth with a pruning-hook here; it appeared to you, gentlemen, that not only was their testimony worthless, but that it was a disgrace and ridicule to put them on the witness stand.

Mr. Willard: I object.

The Court: I will stop this case in a way that will be melancholy for you, if you don't shut your mouth. You must not interrupt.

Mr. Willard: May I not object ?

The Court: Do anything you please, but no man on earth can make an argument to a jury who is interrupted, I don't care how well governed a mind he may possess. He can not make an argument to a jury, being interrupted in the course of it. (To Mr. Duncan.) You were limited to two and one-half hours, and every minute he interrupts will be credited to you to the extent of that amount of time.

Mr. Duncan: Now as to these depositions. These depositions were supposed to be taken before Fitzgerald as a man who occupied an impartial position between these parties. Is not that so? When it came to the taking of the depositions upon the part of Warren, who appeared to cross-examine this man Kutchback, and Beers? Do you remember them? Nobody but our friend Fitzgerald, the man who pretended to be the judge between these parties, and occupied the impartial position of taking these depositions, of commissioner.

To show you just exactly how this man Fitzgerald conducted this examination when it came to taking Warren's testimony, I want to call your attention to something you can not overlook; something of too much importance to be overlooked, and so I will call your attention to it. They started in at nine o'clock in the morning to take the deposition of a man named Beers, and the deposition of a man named Kutchback, simply upon two points, as to how long they knew Warren, and if, during that time, he ever shook. The examination ought to have been made in ten minutes. It was taken down in longhand and written out in longhand. Warren and his attorney went down there, and this man Fitzgerald actually and positively asked this man Kutchback, beginning at 9 A. M., August 19th (he was Warren's witness and was asked thirteen questions on direct examination), and thereupon this Fitzgerald turned in and asked him ninety-seven questions on cross-examination, all written down in longhand, and the shades of night coming on before that examination closed, the taking was adjourned until nine o'clock in the morning.

The story told by these depositions constitutes one of the most outrageous records of oppression, of disregard for the rights of a human being, that ever had itself aired in a court of justice.   I call your attention to these things, my friends, so you may, in some degree, become imbued with the proper spirit of this lawsuit and what it means.   *   *   *

Maybe some of you, or all of you, have heard about John G. Saxe, who was in a railroad wreck when the accident did not occur under half the violent circumstances that this did. He was all right until a short time afterward, and then developed into a helpless paralytic—went from his nervous system into the brain, and he died in a private mad-house. I have within my own mind the case of a man who sat with a party of four in seats playing cards on a train.   It was a mixed train, and in switching cars the engine sent a car up against this caboose.   The other three did not experience any inconvenience from it, but inside of two months he had a contusion of the spine that made him a helpless and hopeless victim.

Mr. Willard:   I object to that as not being in evidence.

The Court:   It is always done by way of illustration.   It is not in evidence.   I have never known an argument checked because an illustration was used.   It is calling your attention to the experience of persons in life."

Now put these things together.   The jury had no concern with the manner of taking the depositions.   If that were objectionable, the objections should have been made to the court before the case was called for trial.   Kassing v. Mortimer, 80 Ill. 602.

If the depositions are read, only the questions to, and answers by, the witnesses are evidence before the jury.

Here was an action for injuries sustained, as alleged, by a railroad accident; a passenger suing the road.   That the accident was purposely caused, is so preposterous that nobody thought of it; yet the counsel warms up the jury in advance with the following words:   " That no single, humble individual of any community in Illinois should be crushed by an organized aggregation of force against him."

To prove how this attempt at crushing was made, he tells the jurors of things which legitimately can not come before them. The efforts of the appellant's counsel to stop such a course are vain; worse; for they only serve to draw out the apparent sanction by the court of the conduct and remarks of the appellee's counsel, culminating in a threat, vague, portentous, suggestive of something lingering to make the punishment fit the crime.

When a deposition is read, by the order of the court the conduct of the appellee and his counsel, in a matter not touching the merits of the case on trial, and with which the jury have no concern, is made evidence for the appellee, before the jury, for no other purpose than that the jury—as counsel said at the close—" may in some degree become imbued with the proper spirit of this lawsuit and what it means."

At last counsel by his speech puts in the supposed experience of Saxe, and an unknown card-player, as evidence that nervous disorders may be the result of slight causes, and the court approves the remarks as illustrations.

What do those examples illustrate except that in fact slight causes may produce serious results; and—is it not—therefore it is probable that they did in this case?

Such methods of trying cases are not tolerable, and the only corrective is for counsel to know that by such methods they imperil verdicts in a class of cases in which they are almost sure to win. West Chicago Street R. R. v. Groshon, 51 Ill. App. 463; Same v. Annis, 62 Ill. App. 180.

We should underrate the sagacity of the counsel of the appellee if we assumed that he had no purpose in forcing into the case as evidence for the appellee the conduct of the appellee and his counsel before the commissioner, and in making evidence by his closing speech.

That purpose could only have been to shut the eyes of the jurors to the weak points of his case, or to aggravate the damages by inflaming them with the notion that the appellant was a fit subject for a severe penalty.

It is no answer to say that the appellee, suing a railroad,

would have had a verdict anyhow; the appellant had the right to be mulcted under the forms of law.

For less objectionable proceedings than this record shows, the Supreme Court of the United States reversed the judgment in Waldron v. Waldron, 156 U. S. 361.

The judgment is reversed and the cause remanded.