## Chicago City Ry. Co. v. Pincus Ahler.

1. PRACTICE—*Where the Case May be Taken from the Jury.*—The case may be taken from the jury where the evidence, with all the inferences the jury can justifiably draw therefrom, is wholly insufficient, if credited, to sustain a verdict for the plaintiff.

2. SAME—*Improper Interruptions by Counsel.*—In a closely balanced case numerous interruptions of counsel, who present improper and illegitimate considerations to the jury, is ground for setting the verdict aside and awarding a new trial.

3. STREET RAILWAYS—*Company Has Superior Right of Travel on Tracks Except at Crossings.*—A street railway company has the paramount right of way upon its tracks at places other than street crossings, but it must use all reasonable means to avoid injuring those whom it knows may lawfully use that part of the street occupied by its tracks.

4. SAME—*Motorman Not Required to Slacken Speed While Passing a Vehicle Going Parallel to Track Not at a Crossing.*—A motorman is not required to stop his car when approaching a vehicle moving along the street in the same direction with no indication that it is about to get on the track in front of the car.

5. INSTRUCTIONS—*Improper to Burden the Trial Court with a Large Number.*—It is improper to burden the trial court with an examination of a large number of instructions; nevertheless a charge composed of instructions which are short and clear and of a character to enlighten the jury is preferable to a charge composed of a few that are long, diffuse and complicated.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge presiding.

Heard in the Branch Appellate . Court at the October term, 1901.
Reversed and remanded.   Opinion filed March 31, 1903.

**Statement.**—This is a suit for personal injuries.  Judg-
ment was rendered upon a verdict in favor of appellee for
ten thousand dollars.

Appellee was engaged in selling and delivering candy, in
which business he used a one-horse covered wagon.  The
cover completely inclosed the body of the wagon, and from
his seat the driver could not see what might be in the rear
of his conveyance.  He could look to the right or left
through glass doors on either side, and when these doors
were open could look behind by thrusting his head out
beyond the side.  At the time of the accident the side doors
were closed.  Appellee had stopped to sell candy at a store
on Thirty-first street, which stood on the third lot east of the
southeast corner of Thirty-first and Wallace streets, Chicago.
The frontage of these lots is twenty-five feet.  He remained
in the store about half an hour.  His daughter was with him.
She returned to the wagon first.  There are double street
car tracks on Thirty-first street, the east-bound cars using the
southward of the two tracks.  When appellee came from
the store, he looked at the east corner for a car, but saw
none there; he looked back as far as the street crossing.
Then he got in his wagon, "fixed up a couple of boxes of
candy there," which he says took him a minute or two, took
his lines "and began to drive."  He started eastward and
then turned northward to get on the east-bound or south
track.  His horse was between the rails, and his left front
wheel on the track, when an eastward bound car struck his
wagon at or near its left front wheel, and upset it, causing the
injuries complained of.  The car had just before stopped at
the east side of Wallace street, and according to appellee's
attorney "could not have been more than twenty-five or
thirty feet west of the wagon," when it started.  A special
interrogatory was submitted to the jury as follows: "Do you
believe from the evidence that plaintiff got on the track
and received the injury in question, because he failed to
exercise ordinary care for his own safety?"  To this the
jury answered " No."

William J. Hynes and Samuel S. Page, attorneys for appellant; Mason B. Starring, of counsel.

Brandt & Hoffmann, attorneys for appellee.

Mr. Justice Freeman delivered the opinion of the court.

It is first insisted by appellant's attorneys that the court erred in refusing to take the case from the jury at the close of the plaintiff's evidence, and again at the conclusion of all the evidence. This may be done where the evidence with all the inferences the jury can justifiably draw therefrom is wholly insufficient, if credited, to sustain a verdict for the plaintiff. Boyle v. I. C. R. R. Co., 88 Ill. App. 255–257, and cases there cited.

It is claimed that the decided preponderance of the evidence, some of it undisputed, shows negligence contributing to the injury on the part of appellee, and an absence of negligence on the part of appellant. Appellee's negligence is said to have consisted in his failure to look out and take notice of the car which was approaching when he got into his wagon at the store, and in driving abruptly and without care or caution onto the track in front of the car, of whose approach he had or should have had full notice.

The car which struck the wagon must apparently have been in plain sight when appellee got into his wagon. One of his witnesses, the storekeeper, Miller, testified : "When he went out, there was no car at Wallace street. When he was packing in the back part of the wagon, the car then came just at that minute; both started at the same time. I could see both the car and wagon. It was broad daylight. There was nothing between the wagon and car to keep anybody on the wagon from seeing the car. The street paving was kind of bad there." Appellee, himself, testifies what he did after he came out of the store as follows : "Well, you know that place I was always careful. I looked for a car in the back and I did not see the car, and before I put my hitch-iron inside, I looked for a car." On cross-examination he says : "I looked on the corner. I see on the

corner there was no car. I mean the east corner. Q. That is as far as you looked? A. Until the crossing. I didn't see a car." This east corner of the street was about seventy-five feet away, and across Wallace street to the opposite corner was something over a hundred feet. It is quite apparent from this testimony that appellee did not look back before getting into his wagon with any distinct purpose of seeing whether or not there was a car coming which it was desirable for him to keep out of the way of.

There is some conflict in the evidence as to the direction which he took in getting on the track immediately in front of the car. Appellee's own statement is as follows: " Q. Go on and tell us, when you started to drive, where did you drive to? A. I drive on the track. It was a heavy wagon, and I could not drive out on the side, and I went to get in on the track. I only had one horse. Q. At time the car struck your wagon where was your horse? A. My horse was on the track between the rails. The left front wheel was put in the track." His daughter, who was with him in the wagon, testified : " He started toward the east. He went two or three feet east, before he turned into the track; he went two or three steps of the horse. After we had gone these two or three feet east, the horse slid around. He pulled the reins and the horse turned right around like making a curve ; he went right into the track." According to the testimony of appellee's witness, Miller, " the car first struck the wagon about the east line of my store; it was tipped over about in front of the west window of Gordon's store." If this witness is correct, appellee had driven about twenty-five feet eastward, as shown by a plat in appellee's brief, before he got on the track at the place where the collision occurred, and the wagon was overturned about the same distance from the point of collision. It is not disputed that the wagon was struck at or near the left front wheel, indicating, it is claimed, that the car was so near when appellee reached the track that his wagon was hit almost as soon as the front wheel could get on the rails. Another of his witnesses, Dennen, testified that when appel-

lee turned in upon the track " the front end of the car was pretty close to the wagon then; I don't think it was very many feet; I mean it was something like two or three feet."

It is apparent from this evidence introduced in appellee's behalf that he drove on the track almost directly in front of an approaching car close at hand, and, so far as appears, he made no effort to acquaint himself with the situation of the car.   His attorney's theory is stated as follows:   "From this testimony it clearly appears that the car started without the ringing of any bell and in broad daylight, and proceeding at a very low rate of speed, and without any notice of its approach being given, ran into the wagon of appellee, which was a short distance in front of it and in plain view, and then deliberately pushed the wagon a distance of twenty-five or thirty feet, and then threw it over and passed beyond it.   The negligence of the motorman was so great as to be almost criminal.   There can be no possible excuse for pushing the wagon twenty-five or thirty feet, nor in fact for striking it at all, at the rate of speed at which the car was going when the wagon turned into the tracks.   Appellee was guilty of no negligence in the premises.   Before entering the wagon he looked along the street to see if any car was approaching.   *   *   *   He was not obliged to keep his head out of the wagon looking behind him.   And he was guilty of no negligence whatever in acting upon the supposition that appellant would perform the common and well known duty which it owed to the public, that of giving notice of the approach of its car behind him by ringing of a bell or in some other way."   It does not, however, by any means "clearly appear that the car started without the ringing of any bell."   This is strenuously denied by appellant's witnesses, and their testimony can not be ignored.   Indeed, it is insisted with much plausibility, that appellee's testimony does not preponderate on this point.   Nor is there evidence tending to show any willful or wanton conduct on the part of the motorman.   There is evidence entirely credible and not seriously contradicted

tending to show that he used every effort calculated in his judgment to stop the car, and that the train slid along the rails far enough to upset the wagon in spite of his efforts, because of the dampness and mud on the rails.

Appellant's theory is that although it was under no obligation to notify appellee of the approach of its car, because, as it contends the evidence shows, he was not on its track and was driving eastward, apparently with no intention of getting on the track, yet that it did in fact ring its bell and sound its warning gong; that nevertheless appellee unexpectedly and suddenly swung his horse into the track when the car was so close that the motorman was not able to stop in time to avoid the accident; that even then the car was going so slowly—and it is conceded that it was going very slowly—that it is a question whether any damage would have been done, had not the rails been rendered so slippery by the weather and the mud, that in spite of all the motorman could do, the weight of the car carried it far enough to tip over appellee's wagon. The collision occurred at a point between two cross streets where there was no occasion for the motorman to anticipate that appellee would endeavor to cross the tracks. He did not in fact undertake to cross. His motive was to get on the rails, because the street outside of the tracks, which was paved with wooden blocks, was in some places rough.

As to whether appellant's motorman rang his bell as he approached, there is direct conflict of testimony. Several of appellee's witnesses state that they did not hear any bell, and others state positively that none was rung. Upon such a conflict of statement the court and jury who hear and see the witnesses are in a better position to pass upon the value of the testimony on either side than a court of review. It is doubtless true, however, that the positive evidence of one who did hear is generally of more evidential value than a mere negative statement of one who did not hear. It is common experience with those in the habit of hearing street car bells or other similar noises that the mind often takes no distinct impression of them, unless

rung with unusual clangor; and the presence of an impending peril to any one may perhaps easily distract attention from sounds which would otherwise be remembered.

Where there is such conflict of evidence, and where upon undisputed facts the question of appellee's contributory negligence is by no means free from difficulty, it is important if the verdict of the jury is to be given the weight to which it ought to be entitled, that the trial should be not only free from serious errors, but also from whatever may be calculated to interfere with an impartial, unobstructed and unprejudiced consideration of the evidence. In the case at bar it is complained that appellee has not made out a case which in law entitles him to recover, and that there was conduct of appellee's counsel which vitiates the verdict and judgment.

As we have said, it appears from appellee's evidence that the accident occurred in consequence of an effort on his part, not to cross the tracks at any street intersection, but to make use of the track as a driveway for his own convenience, because the rest of the street was more rough and harder to drive upon. Upon the tracks at that point appellant's car had the paramount right of way. It could not be turned to one side or the other to avoid vehicles. Appellee had no right to get on the tracks for such purpose immediately in front of a moving car solely because it was easier to drive there, when by so doing he was interfering with the ordinary progress of the car. Booth on Street Railways, Sec. 303. It was his duty to "exercise ordinary care for his own safety and not obstruct the passage of the car." North Chi. Elec. Ry. Co. v. Peuser, 190 Ill. 67–71. On the other hand, it is the duty of appellant to "employ all reasonable means to avoid injuring those whom it knows may rightfully use that part of the street occupied by its tracks." Idem. If appellee turned so suddenly upon the track in front of the electric car as to render striking his wagon unavoidable in the exercise of every reasonable precaution in operating the car, and the accident resulted in consequence, he is not entitled to

recover.   Pfeiffer v. Chicago City Ry. Co., 96 Ill. App. 10-11.   Until appellee started to get on the track there would apparently be no necessity for stopping the car, and if, while his conduct indicated no such intention, he changed his course and drove on the track so suddenly that the act could not be foreseen or guarded against by the motorman in time to prevent the accident, then appellant is not liable for failing to stop the car in time to avoid a collision.   Rack v. Chicago City Railway Co., 173 Ill. 289–292.

Complaint is made of the refusal of certain instructions. Appellant requested twenty-nine instructions.   Some of these were modified and six were refused.   This court and the Supreme Court have frequently expressed the opinion that it is improper to burden the trial court with an examination of a large number of instructions.   Chicago Ry. Co. v. Sandusky, 99 Ill. App. 164, and cases there cited.   Nevertheless, as said in the same case, 198 Ill., p. 400–405, a charge composed of instructions which are "short and clear and of a character to enlighten the jury" is preferable to a charge composed of a few that are "long, diffuse and complicated."   In the case before us the instructions given for appellant were as favorable as it was entitled to.   Although one of the instructions requested, which was to the effect that there is no presumption against defendant from the accident having happened, might properly have been given, yet in view of the instructions which were given, its refusal could have done no harm.

The most serious question presented by the record is whether the case was fairly and impartially presented before the jury.   It is insisted by appellant that it was not, owing to alleged misconduct of appellee's attorney. The case is, as we have said, one in which appellee's right to recover under the evidence is by no means clear and free from doubt.   The jury were entitled to have the evidence placed before them without unnecessary obstruction or diversion of any kind, and the trial should be kept free from anything tending to excite their passions or preju-

dices. The record in this case shows occurrences which, after full and prolonged consideration, we are compelled to believe have deprived the verdict of that title to respect as a determination of the questions of fact in a case so closely balanced, which otherwise might be its due. The attorneys on either side are entitled to present their evidence and to examine their witnesses without frequent interruptions by opposing counsel, calculated to distract the attention of the jury from whatever effect its clear presentation might properly have. In like manner when a witness is undergoing cross-examination, interruptions and objections which may tend to give the witness a cue as to what his answers should be, ought to be carefully avoided. Such conduct, when permitted, tends to deprive trial by jury of its proper weight as a method of settling disputed facts. In this record are repeated instances where the course of the examination, especially the cross-examination, was improperly interrupted by assertions as to matters of fact, by intimations in the form of objections which, whether intentionally or not, did indicate to the witness the kind of answer apparently desired, by denials that the facts were what the witness had sworn they were, and denials that the witness had said what in fact had just been stated by such witnesses. We can not take time and space to particularize to any extent, but as a minor illustration, it was not proper, when appellee was asked on cross-examination about his hearing, for his attorney to object with a statement that "he is not hard of hearing now and never has been," and when the witness answered "Yes," in reply to a question whether he had been getting harder of hearing since the accident, to interpose with a statement, "He can hear now as good as you can." The examination had apparently some bearing on appellee's testimony that no bell or gong was sounded to give warning of the approach of the car, a strenuously controverted and material point. We can, however, only state our conclusion that in a case so closely balanced, these interruptions were so numerous and of such a character as to compel us

to believe the cause was not so fairly presented as appellants are entitled to have it. See Chicago City Railway Co. v. Barron, 57 Ill. App. 469; P., C. C. & St. L. Ry. Co. v. Warren, 64 Ill. App. 584, on p. 590; W. C. St. R. R. Co. v. McKeating, 68 Ill. App. 437, on p. 439; C. & E. R. R. Co. v. Binkopski, 72 Ill. App. 22, on p. 31; Nelson v. Welch, 115 Ind. 270; N. C. St. Ry. Co. v. Cotton, 140 Ill. 486, on p. 503. In this last case it is said : "If counsel will persist, notwithstanding the admonitions of the court, in presenting improper and illegitimate considerations to the jury, it is within the power of the court, and it may become its duty to wrest from them any improper advantage they may have thereby gained, by setting the verdict aside and awarding a new trial." This a court must always regret to have to do, but the duty seems to be plain when occasion requires.

We are of opinion that the evidence relating to appellee's receipts from his business is properly subject to the objection that it does not tend to show what his "ordinary wages or earnings" (C. & E. R. R. Co. v. Meech, 163 Ill. 305–315) were, and hence the damages he claims to have suffered in that respect from the injury. The amount of damage, if any, to which appellee might be entitled is a very material question, but as the cause must be retried, a more explicit showing may be expected. We have not reviewed all the objections presented, but upon the whole case we are compelled to conclude that the judgment must be reversed and the cause remanded for another trial.