256    APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Donk Bros. Coal & Coke Co. v. Tetherington.

### Donk Brothers Coal & Coke Company v. John Tetherington.

1. OBJECTION—*when should be specific.* ·Objections should be specific where they are of such a character as if made specific would enable the examiner to make correction.

2. CROSS-EXAMINATION—*when restriction of, ground for reversal.* Where the court refuses to permit matter material to the issue to be elicited upon cross-examination, where the inquiry made is within the purview of the cross-examination, a reversal will follow.

3. ARGUMENT OF COUNSEL—*what improper by way of.* The following language held to constitute an improper and harmful argument:

"The court after hearing the evidence has seen fit to allow the plaintiff to amend his declaration and increase the amount sued for from $2,500 to $3,500, because the evidence justified it."

"Mr. Forman ran for Congress in 1902. He did not know anything then about hiring men to come into court to testify. He has hired men to come and testify in this case. The State of Illinois does not license men to go out and hire other men to come into court and swear away the rights of farmers."

4. ARGUMENT OF COUNSEL—*what does not cure improper.* The mere fact that objection to an improper argument is sustained, does not necessarily cure the injury inflicted.

Action in case. Appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard In this court at the February term, 1905. Reversed and remanded. Opinion filed September 14, 1906.

WARNOCK, WILLIAMSON & BURROUGHS and FORMAN & WHITNEL, for appellant.

Donk Bros. Coal & Coke Co. v. Tetherington.

W. E. HADLEY and BURTON & WHEELER, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Madison county, by appellee against appellant, to recover damages for injury to appellee's land alleged to have been caused by the negligence of appellant. Trial by jury. Verdict and judgment in favor of appellee for $1,500.

The declaration consists of three counts. The first charges that appellant wrongfully and negligently placed a dump for the refuse matter from its coal washer in such place that when heavy rains and water came, coal slack, slate, sulphur and other substances were carried into a stream flowing through appellee's farm and polluted the stream, and cast large quantities of such refuse matter upon his land, whereby it was damaged and made unfit for cultivation; the second charges that the operation of appellant's coal washer caused coal slack, slate and other substances· from its mine to be carried into the stream, polluting it and depositing large quantities of refuse matter upon appellee's land; and the third charges that the operation of appellant's coal mine and washer caused the waters flowing through appellee's land to become unclean and unwholesome, depriving appellee of the use of the same for watering his stock.

In the view we take of this case it is not proper for us to discuss the weight of the evidence further than to state that we are of opinion that the trial court did not err in refusing to direct the jury to return a verdict in favor of appellant.

During the progress of the trial, a witness was allowed to state, over the objection of appellant, his observation and experience as to the effect of coal slack upon the productiveness of land when washed upon the land from a coal mine. The evidence disclosed that

258    APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Donk Bros. Coal & Coke Co. v. Tetherington.

the observation and experience of this witness was confined to the effect upon his own land, of slack washed upon it from a mine situated about one mile and a half from appellant's mine. The objection interposed was a general objection, counsel simply saying, "objected to."

It is insisted here that the court erred in overruling appellant's objection to this evidence, on the ground that appellee had not proven that the conditions were sufficiently similar. If this specific objection had been made in the trial court, it would doubtless have received due consideration, but having not made it there, we think it too late to make it here. "A party objecting to evidence must point out the objection specifically, and thereby put the adverse party on his guard and afford him an opportunity to obviate it." "Grounds of objections to evidence not specifically made in the court below will not be considered in the Appellate Court." "When the objection to the admission of evidence is of such a character that it may be removed by further proof, it must be stated specifically at the time the evidence is offered." The authorities in support of these general and salutary rules are so numerous and so accessible to all lawyers and courts, that citation of them would appear pedantic.

A witness for appellee had testified on the trial that the crops on appellee's land were not as good as they had been, and that part of the land was damaged 50% of its value on account of the coal slack that had been washed onto it. On cross-examination this witness admitted that he had testified in another case where damage to the same land was in question, that the damage to the crops was caused by water, and that he then gave damages by water as the sole reason for the failure of crops on that land. He was then further asked on cross-examination: "Q. How much has the water damaged it?" Counsel for appellee objected, and the court sustained the objection. This was error. The question asked was within the purview of proper cross-

examination, and the objection to it should have been overruled.

Counsel complain of the refusal of the court to give the 16th and 17th instructions, asked on behalf of appellant. The 16th is as follows: "The court instructs the jury that the defendant company is not responsible for the building or breaking of the Kneedler dam, and if you find from the evidence that plaintiff's land was injured by the coal slack, slate and other substances from defendant's mine, and that said injury was caused solely by the breaking of the dam built by the defendant company in the spring of 1904, and that said dam broke by reason of the Kneedler dam first breaking and that the dam at defendant's mine would not have broken but for the breaking of the Kneedler dam, then you must find defendant not guilty."

Under the evidence of this case, as it now stands in the record, this instruction should have been given. There was no error in refusing the 17th. All that is proper in it is fully embraced in appellant's 11th given instruction.

The most serious and damaging error disclosed in this record is the statements made by counsel for appellee in his closing argument to the jury. The amount of damages that should be recovered in this suit, if any, was a most difficult question for the jury to determine, and was the point in the case where they would be more likely to err than any other, under the evidence as it appeared in the case. It appeared that the farm was in possession of a tenant, and therefore all damages to crops and mere temporary injuries accrued to him. The only damage that accrued to appellee was such as affected the market value of the land, and upon that question the evidence was unusually conflicting and contradictory, consisting of opinions of witnesses *pro* and *con*, with little actual experience or data upon which to base them, and ranging from $75 per acre to no damage at all.

With this state of evidence before the jury, one of

260    APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Donk Bros. Coal & Coke Co. v. Tetherington.

the attorneys for appellee in the closing argument
said: ''The court after hearing the evidence has seen
fit to allow the plaintiff to amend his declaration and
increase the amount sued for from $2,500 to $3,500, be-
cause the evidence justified it.'' And ''Mr. Forman
ran for Congress in 1902. He did not know anything
then about hiring men to come into court to testify.
He has hired men to come and testify in this case. The
State of Illinois does not license men to go out and hire
other men to come into court and swear away the
rights of farmers.'' An objection was interposed, and
the court sustained the objection. Counsel made dis-
claimer, saying that he ''did not intend to say that the
court had passed upon the evidence'' * * *. And
that he ''did not intend to charge Mr. Forman had
hired witnesses to swear falsely'' * * *. And the
court directed counsel ''to desist from personalities,
and confine himself to the evidence, in his argument.''

''Such a statement by counsel is wholly indefensible;
and unless it can be seen that it did not result in injury
to the defendant the judgment ought to be reversed on
account of it. The effects of such (statements) and
attacks may be obviated by the action of the court in
some cases, while in others it may be effective in arous-
ing passion and prejudice notwithstanding the direc-
tion of the court.'' Wabash Railway Co. v. Billings,
212 Ill. 32 (41). The ruling of the trial court at that
time, though correct and proper, ''does not always re-
move the ill effects of (such) misconduct of counsel. *
* * 'Trial courts should not hesitate to use their au-
thority to restrain all efforts of attorneys to obtain ver-
dicts by using (such) unfair means * * * and
whenever such restraining influences do not effect the
purpose, the fruits of such conduct ought to be taken
away by granting a new trial.' '' Chicago Union Trac-
tion Company v. Lauth, 216 Ill. 176 (183—4). ''It is
true the learned trial judge declared this statement to
be improper, and thereupon counsel for appellee (the
attorney himself who made the improper statement)

asked that the remark be stricken out and it was stricken out, and the trial judge did all he could to counteract it, but the harm had been done. * * * The action of the court did not wholly nullify the effect of such misconduct. * * * How far it was potent we cannot say. Of this, however, we are sure: it is better that appellee be put to the trouble and expense of a new trial than that this court should appear to countenance and commend such violations of legal ethics.'' West Chicago Railroad Company v. Kean, 104 Ill. App. 147. ''Notwithstanding improper remarks have been objected to and objections thereto sustained, a reversal may be ordered on account thereof if the remarks are of such a prejudicial character as not to have been effaced in effect by the sustaining of the objection thereto.'' McKenna v. McKenna, 118 Ill. App. 240. In addition to the foregoing, the following are only a few of the long list of cases in which statements and arguments by counsel to the jury have been held to be improper and erroneous, viz.: Chicago City Ry. Co. v. Heydenburg, 118 Ill. App. 387; Supreme Lodge Mystic Workers of the World v. Jones, 113 Ill. App. 241; George A. Fuller Co. v. Darragh, 101 Ill. App. 664; West Chicago Street Ry. Co. v. Musa, 180 Ill. 130; Chicago City Ry. Co. v. Ahler, 107 Ill. App. 397 (406); Taylor v. Harris, 68 Ill. App. 92; West Chicago Street Ry. Co. v. McKeating, 68 Ill. App. 437; P., C., C. & St. L. Ry. Co. v. Warren, 64 Ill. App. 584; Chicago City Ry. Co. v. Barron, 57 Ill. App. 469.

For the errors above noted, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*