# Marie A. Fellows=Kimbrough, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 15,905.

1. EVIDENCE—*what improper cross-examination.* In an action on the case for personal injuries, *held,* that it was improper upon cross-examination to permit the plaintiff to show that people gathered at the scene of the accident and were threatening to mob the motorman for what he had done.

2. EVIDENCE—*what improper cross-examination.* It is error for the court ot permit counsel by cross-examination to attempt to insult, brow-beat and degrade a witness.

3. EVIDENCE—*what does not cure improper cross-examination.* An instruction which withdraws from the consideration of the jury matters improperly elicited upon cross-examination, does not cure the error if prejudice notwithstanding must have resulted.

4. EVIDENCE—*duty of court to regulate cross-examination.* It is

the duty of the trial court so to regulate a cross-examination as to prevent improper prejudice resulting and a failure to perform this duty is ground for reversal.

Action in case for personal injuries.    Appeal from the Superior Court of Cook county; the HON. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909.  Reversed and remanded.    Opinion filed November 14, 1911.

JOHN E. KEHOE and C. LEROY BROWN, for appellant.

BRANDT & HOFFMAN, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Appellee brought an action on the case against appellant for damages on account of personal injuries alleged to have been sustained September 5, 1907, in a collision between a north bound Indiana avenue car and an east bound Thirty-fifth street car. Appellee was a passenger on the Thirty-fifth street car. The collision appears to have been caused by a metal finger on the controller of the Indiana avenue car coming loose which rendered it impossible for the motorman to shut off the electric current in the usual way.

It is unnecessary for us to set out the substance of the eleven counts in the declaration or to state the evidence in the case, for the reason that independent of the issues and the evidence we must reverse this judgment because of the improper conduct of the plaintiff's attorney during the trial, which was so reprehensible as to show us that the trial was not fairly conducted.

In the cross-examination of the motorman of the Indiana avenue car, plaintiff's attorney brought out over the defendant's objection that people gathered at the scene of the accident and were threatening to mob the motorman for what he had done. The record shows:

Q.    ''Don't you know, after this accident happened, the people that gathered there were going to mob you for what was done there?

MR. KEHOE: I object to that.

THE COURT: Sustained.

MR. BRANDT: Q. Was there a large crowd of peo ple there?

THE COURT: I think if there is any error in the matter it is done by the question. He may answer. Objection overruled.

To which ruling of the court the defendant excepted.

A. Yes, there was quite a number of colored people around there acted mad.

Q. Did any of them say anything to you?

Defendant objected. Objection overruled and exception by defendant.

A. Yes.

Q. Did you say anything to them?

Defendant objected. Objection overruled. To which ruling of the court defendant excepted.

A. No.''

Later in the cross-examination of this witness he testified it took some time to think about the use of the air brake and said, ''You can't do it within a second.'' Counsel for the plaintiff, under the guise of a question, then said to the witness, ''You haven't got a very good thinking apparatus anyhow, have you?'' The defendant entered an objection which was sustained by the court.

Further on in cross-examination plaintiff's attorney declared, ''You ran on and struck this other car, as you said, without shutting it off at any time, because you couldn't think.'' Defendant objected and its objection was overruled, and the defendant excepted. This latter declaration does not purport to be in the form of a question. It was not based upon anything the witness had said. It was purely and simply an attempt to insult, brow-beat and degrade the witness.

This witness further testified that he was not at the time of the trial in the employ of the defendant and that he felt no interest in the case, whereupon plaintiff's counsel said to him, ''You know it is claimed that

in this case it was through your fault that that woman was permanently and seriously injured." The defendant objected, the objection was overruled, and exceptions were duly preserved. Thereupon the plaintiff's attorney said, over objection which was overruled, the following: "Do you care whether the jury believe you were to blame or not?" The record shows that plaintiff's attorney persisted further on this line, and asked in various forms whether the witness wanted the jury to find he was in fault or wanted to be blamed for the accident.

In our opinion, this examination was wholly unwarranted and should not have been allowed by the court. The rulings of the court during the examination were erroneous.

In the cross-examination of the defendant's expert witness Magill, he testified that the fingers in the controller box were necessarily attached by screws and that rivets were not a proper attachment, for several reasons, and that if the rivets were used it would damage the construction of the controller to get at the fingers. Plaintiff's attorney exclaimed to the witness: "Suppose you did destroy the controller, wouldn't that be better than to destroy a lot of human lives?" To this the defendant objected and its objection was sustained. The cross-examination proceeded further and it appeared the use of rivets was impossible, whereupon the plaintiff's attorney said: "Then the idea was to take the risk of the thing coming unscrewed for the sake of using that kind of an apparatus." To this objection was made and sustained.

In the cross-examination of several witnesses who testified as to the plaintiff's talk after the accident, plaintiff's counsel constantly accused the witnesses of expecting to be paid large sums of money. Many of these witnesses were from the lower walks of life. The witnesses were excluded from the court room

while others were testifying, and several times when a witness came in from the hall where he had been waiting, defendant's attorney took his hat. On one of these occasions plaintiff's attorney exclaimed: "I think the taking care of these hats ought to be stopped. I wish you wouldn't put them under my nose anyway. If you insist upon taking care of them put them somewhere else." And later on when the attorney for the defendant took the hat of another witness, plaintiff's attorney said: "Are you obliged to act as if you were in a barber shop?"

It is hardly possible for a more incurably erroneous and outrageous cross-examination to occur than the cross-examination as to the gathering of the mob at the scene of the accident. It was well calculated to prejudice the jury, and no course of action could be more calculated to prejudice the jury than such a cross-examination of the witnesses. It is a common thing for people to think that the spontaneous conduct of those at the scene of an occurrence like this constitutes evidence as to whether or not an actor in that occurrence is culpable, and the jury were doubtless ready to accept the action of the mob as indicative of the condemnation that should be placed upon the transaction by them.

A similar question arose in Chicago City Railway Co. v. Uhter, 212 Ill. 174. In that case upon the cross-examination of a witness the plaintiff's attorney asked whether a policeman did not cause the arrest of the conductor and motorman of the car involved in the accident. That cross-examination was objected to but the trial court overruled the objection. The Supreme Court in reversing the judgment said: "This evidence in regard to the arrest was improperly admitted by the trial court. There was no charge of wilful and wanton conduct on the part of the motorman and the conductor in the declaration, but only the charge of

ordinary negligence on the part of the company. The admission of this evidence tended to make the impression upon the minds of the jury that the motorman and conductor had been guilty of committing an act which was criminal in its nature, and as the verdict of the jury before its reduction by *remittitur* was $12,500, it may be that the jury came to the conclusion, in view of this evidence, that they had a right to award punitive damages. The theory upon which the introduction of this testimony is sought to be justified is that the officer's act in making the arrest was part of the *res gestae.* It cannot be so regarded.''

In Chicago City Ry Co. v. White, 110 Ill. App. 23, a witness testified, over repeated objections and exceptions by counsel for defendant, to a conversation with the conductor immediately after the accident. This conversation was in the nature of a protest by a passenger against the conduct of the conductor in putting the plaintiff off the car. After the witness had testified to an angry protest in this conversation the evidence was stricken out by the trial court. This court held the evidence was manifestly incompetent, and that its being brought before the jury was so manifestly prejudicial that the judgment must be reversed, even though the evidence was afterwards stricken out. In reversing it the court said: ''Such testimony may influence the jury notwithstanding the efforts of the trial court to contradict it,'' citing many authorities.

In the case at bar the court overruled the defendant's objection to the inquiry as to the mob, not because the court thought the inquiry was proper, but because, as the court expressed it, the harm was done by asking the question. The admission of the evidence did not cure the harm or correct the error, but, in our opinion, emphasized it. The error was not cured by the instruction given to the jury withdrawing from the consideration of the jury what was said by bystanders,

The striking out of such evidence or the withdrawal of the same from the jury cannot remove from the minds of the jurors the effect of the evidence, nor can the conduct of plaintiff's counsel in bringing out such circumstances on the trial be cured by the proper rulings of the trial court. The court has power to control counsel in the trial of a cause, and it is as much its duty to exercise a proper control over counsel in the conduct of a case as it is to discharge any other duty devolving upon the court. Where the court fails to properly control counsel either in the examination of witnesses or in arguments to the court and the jury, and it is apparent that the misconduct of the counsel is calculated to prejudice the jury, or where the counsel suggests facts in questions not proven by the evidence, which are calculated to prejudice the jurors in their consideration of the case, it is the duty of this court to interpose and prevent the success of such methods by setting aside the verdict.

As said in West Chicago Street R. R. Co. v. Johnson, 69 Ill. App. 147:

"A proceeding under the law to enforce a right or give redress for a wrong, having as its result the taking from one man his money or property and conferring it upon another, is always a matter requiring the most solemn and deliberate consideration by the tribunal entrusted with such duty and responsibility. The purpose, in part, for which courts are established, is that justice shall be administered, not alone with impartiality but in an orderly manner, and whatever tends to thwart such an administration of justice operates to deprive the party to the suit of his right to due process of law."

In Chicago & Alton R. R. Co. v. Scott, 232 Ill. 419, the court said:

"A court owes a duty of protection to witnesses and parties, and especially to witnesses, and hearing an at-

torney, under the guise of argument, abusing his privilege, should, either upon objection or its own motion, check the attorney, and not only do that but preserve the dignity of the court by compelling obedience to its order.'' (3 Enc. of Pl. and Pr., 750.)

"It is the duty of a court to preserve its own dignity and the respect due to the court and the administration of the law by not allowing an attorney, under the pretense of arguing the case, to indulge in the abuse of parties or witnesses.'' City of Salem v. Webster, 192 Ill. 369.

The power vested in the court should have been promptly used in this case at the outset by stopping the line of examination and the manner of it upon which the attorney had entered, and affirmatively endeavor to remove the prejudice excited by his language. The court failed in its duty, and the mere sustaining of objections was no adequate remedy for the evil done. As was said by the Supreme Court of Wisconsin in Sullivan v. Collins, 107 Wis. 291:

"The least that a self respecting court can do under such circumstances is to stop such practice in the presence of the jury, and not allow it to proceed with simply a perfunctory sustaining of objection."

To the same effect are numerous other cases, among which may be cited, I. C. R. R. Co. v. Seitz, 111 Ill. App. 242; Pittsburg C. C. & St. L. R. R. Co. v. Warren, 64 Ill. App. 584; C. C. Ry. Co. v. Barron, 57 Ill. App. 469; C. C. Ry. Co. v. Ahler, 107 Ill. App. 397, and Maxwell v. Durkin, 185 Ill. 546.

For the error of the court in allowing the misconduct of the plaintiff's attorney on the trial of this case and for the error in its rulings indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*