less caused by misconduct, negligence, or unskillfulness of the defendant in blasting the rock, but it has been shown herein that, from the result of the blasting, dirt and stone were cast upon the premises of the plaintiff, so that there was an actual, physical invasion of his premises, so therefore the question of the negligence of the defendant or want of skill would be wholly immaterial, and for such invasion a liability would flow. Holland House v. Baird, 169 N. Y. 136, 62 N. E. 149. It therefore follows that the jury erred and disregarded the charge of the court when the court charged in substance that if such blasting cast dirt and stone upon the premises of another, so that there is an actual physical invasion, he is liable for the consequential damages, irrespective of the negligence or want of skill, and for this reason the court must grant a new trial.

[5] On the question whether costs should be imposed in the granting of a new trial under section 999 of the Code of Civil Procedure it has been held that in case of error, mistake, or misconduct of a jury the motion should not be conditioned on the payment of costs to the party who obtained the verdict. Costs are proper only when the erroneous verdict was caused by the fault, mistake, omission, or improper conduct of a party to the action. Therefore no costs should be imposed for the relief herein granted. Rothenberg v. Brooklyn Heights R. R., 135 App. Div. 151, 119 N. Y. Supp. 1001, and cases therein cited; Andrews v. Daniel Le Roy Dresser, 140 App. Div. 925, 125 N. Y. Supp. 731; Post v. Kerwin, 150 App. Div. 321, 134 N. Y. Supp. 714.

Motion granted. Settle order on one day's notice.

_____

(84 Misc. Rep. 637)

HOFFMAN v. NEW YORK RYS. CO.

(City Court of New York, Trial Term.    March, 1914.)

1. NEW TRIAL (§ 29*)—POWER TO SET ASIDE VERDICT—CONDUCT OF COUNSEL.
    Where the court is not convinced that the conduct of counsel in reiterating to the jury the contents of material documents not received in evidence has not improperly influenced the jury, it may set aside the verdict, though objections to such conduct have been sustained, and the jury instructed to pay no heed thereto.

    [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 43, 44; Dec. Dig. § 29.*]

2. NEW TRIAL (§ 68*)—GROUNDS FOR SETTING ASIDE VERDICT.
    Merely that the trial justice feels strongly that, had he been a member of the jury, he would not have concurred in the verdict will not authorize the setting aside a verdict uninfluenced by prejudice, passion, mistake, or improper influences.

    [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 135–140; Dec. Dig. § 68.*]

3. NEW TRIAL (§ 29*)—GROUNDS FOR SETTING ASIDE VERDICT—CONDUCT OF COUNSEL.
    Where, in a personal injury case, counsel for defendant reiterates, in the presence of the jury, the alleged contents of documents excluded from evidence, which documents discredit plaintiff's evidence and relate to the

controlling questions as to the manner in which the accident happened and the extent of plaintiff's injuries, duration of his enforced idleness, and diminution of his earning power, and it appears that such conduct improperly influenced the jury in returning a verdict for defendant, the verdict will be set aside, especially where counsel's statement of the contents of documents is made for the plain purpose of prejudice, and he does not acknowledge its incorrectness or ask the jury to disregard it, and where the jury is instructed only once to disregard it, and the incorrectness is not even suggested.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 43, 44; Dec. Dig. § 29.*]

Action by David Hoffman against the New York Railways Company, for personal injuries. Motion by plaintiff to set aside a verdict for defendant. Verdict set aside, and new trial ordered.

Abraham Harris, of New York City (Hugo Wintner, of New York City, of counsel), for the motion.

James L. Quackenbush, of New York City (J. C. Edwards, of New York City, of counsel), opposed.

RANSOM, J. If the verdict of a trial jury is to be considered as determinative of the credibility of witnesses and controverted questions of fact, the deliberations of the jury must be kept free from prejudice, passion, or mistake, and likewise free from the operation of influences foreign to the testimony actually received. If the defendant, in a negligence action, is to be entitled to assert that a jury verdict in its favor stands upon a special basis of immunity from judicial interference, so far as the weight of evidence is concerned, then surely the defendant's counsel must share with the court the responsibility for seeing to it that such a verdict is in no way influenced by considerations outside the record, and certainly not by considerations explicitly refused a place in the record. Because convinced that the verdict rendered for the defendant in the case at bar was influenced profoundly, and perhaps brought about solely, by a flagrant infraction of these fundamental rules, the trial court accepts its own primary responsibility for the proper conduct of the proceedings before it, and directs that the verdict rendered be set aside, and that a new and fair trial of the plaintiff's claim be had.

[1] The question here presented is in substance whether the trial justice, where he has sustained all the objections made to the conduct of counsel in reiterating to the jury the contents of vital documents not received in evidence, and has instructed the jury that they should pay no heed to such statements by counsel, is bound to assume that his efforts to eradicate the effects of such misconduct were effectual, or whether he may nevertheless set aside the resultant verdict, if convinced beyond a doubt that the misapprehensions created by the conduct of counsel remained a decisive factor in the jury's deliberations. The fact that it is seriously suggested that I have no right or power to disturb this verdict upon such a ground, and the fact that no decision determinative of the question in this state has come to my attention, are my reasons for discussing the matter at much greater length than

would ordinarily be warranted in disposing of a motion of this character.

The action is for damages for personal injuries. The negligent acts complained of were those of the conductor and motorman on one of the defendant's surface cars in suddenly starting such car in motion just as the plaintiff, a man of upward of 50 years of age, was on the step of the car, in the act of boarding the same, at the south crossing of One Hundred and Sixth street and Madison avenue. The plaintiff was thrown to the pavement and injured. The defendant's theory of the accident was that the plaintiff did not attempt to board the car until the conductor had rung the bell and the car was in motion, and that accordingly the plaintiff was blamable for what befell him. Inasmuch as the plaintiff concededly sustained some injuries and some loss of earnings, for which he would be entitled to be compensated were his version of the accident to be accepted, the jury must, under the circumstances of this case, be deemed to have believed and accepted the defendant's version and to have determined that the plaintiff and his witnesses were unworthy of belief.

Under ordinary circumstances, a verdict so palpably reached by a determination that the plaintiff and his witnesses had committed willful perjury or had been grossly mistaken in their recollection as to the main facts of the occurrence is peculiarly the kind of a verdict with which no court should interfere. After carefully reviewing the events of the trial, however, I am confirmed in the view, strongly held by me at the time, that this determination of the jury was brought about in a manner tantamount to the denial of a fair trial to the plaintiff, and that accordingly I ought not to permit the verdict to stand. To decide otherwise would be in effect to hold that an appellate court, which can gather from the record but little of the atmosphere of the actual trial, should be left to an unaided determination whether the verdict of the jury was influenced by considerations foreign to the record or whether a fair trial has in fact been had. Therefore I do not believe that the trial justice, when confronted with a motion to vacate the verdict reached by the jury over which he presided, can escape responsibility for the enforcement of the wholesome observance of the fundamentals of a fair trial. Especially is this responsibility of the trial justice one to be squarely faced by him, in view of the holdings that the authority of the court of ultimate appeal is confined to the review of rulings made by the trial court and exceptions duly taken thereto (Dimon v. New York Central & Hudson River R. R. Co., 173 N. Y. 356, 66 N. E. 1), and that the operation of improper influences in the trial court is to be dealt with primarily in that court, rather than on appeal (Chesebrough v. Conover, 140 N. Y. 382, 388, 35 N. E. 633; Cole v. Fall Brook Coal Co., 159 N. Y. 59, 53 N. E. 670).

[2] In deciding to set aside the verdict rendered before me, I am not unmindful of the claims made by the defendant as to the peculiar status of a verdict in its favor in an action like that at bar. A jury of 12 disinterested men of affairs, chosen at random from the community, is, of course, the best instrumentality yet devised for determining the credibility of witnesses and sifting out the truth where

facts are controverted; and it is the settled law of this state that the court has no right or power to substitute is own judgment for that of a jury which has been permitted to hear the testimony, observe the witnesses, and absorb fairly the atmosphere of the events in suit. Archer v. New York, New Haven & Hartford R. R. Co., 106 N. Y. 589, 13 N. E. 318; Grogan v. Brooklyn Heights R. R. Co., 107 App. Div. 254, 95 N. Y. Supp. 23. That the trial justice feels strongly that, had he been a member of the jury, he would never have concurred in the acceptance of the version of the accident which the jury did believe and accept creates no reason and confers no right to disturb the conclusions of a jury whose consideration of the case was uninfluenced by prejudice, passion, or mistake, or by the operation of improper influences foreign to the testimony actually received in the case. De Luna v. Union R. Co., 130 App. Div. 386, 114 N. Y. Supp. 893; Clinton v. Frear, 107 App. Div. 571, 95 N. Y. Supp. 321; Simonsen v. Brooklyn Heights R. R. Co., 53 App. Div. 478, 65 N. Y. Supp. 1077. Appellate courts of this state have even held, as to the power of the trial court to set aside the verdict of a jury after the trial of a negligence action, that a verdict for the defendant in such an action stands upon essentially a different basis, so far as motions addressed to the weight of evidence are concerned, than a verdict in favor of the plaintiff, and may not be disturbed upon the same showing as would warrant the setting aside of a verdict for the plaintiff in such an action. Jarchover v. Dry Dock, East Broadway & Battery R. R. Co., 54 App. Div. 238, 66 N. Y. Supp. 575; Mieuli v. New York & Queens County R. Co., 136 App. Div. 373, 120 N. Y. Supp. 1078. But if this be the correct rule, and the benefits of that rule are to be claimed by defendants in these negligence actions, it would seem to be elementary that their trial counsel should so conduct themselves upon the trial as not to prejudice, mislead, or confuse the jury by matters foreign to the testimony admitted. They may not induce a verdict for the defendant by conduct creating prejudice, passion, misapprehension, mistake, or false impressions on the part of the jury; they may not undermine the credibility of the plaintiff and his witnesses by methods in violation of the rules of evidence and the orderly conduct of trials, and then be heard to claim, as does this defendant, that a verdict so induced stands upon an especially sacred footing, when subjected to the scrutiny of the trial justice or the appellate tribunal.

[3] The course pursued by the trial counsel for the defendant offended most seriously against the principles above stated, and I have no hesitation in saying, from a very close observation of the atmosphere of the trial and its developments, that this transgression was, in spite of such efforts as were made to eliminate its effects, the turning point of the trial and the decisive factor in the determination of the jury that the story told by the plaintiff was not to be believed. It is the common experience of men familiar with the workings of a jury system that the mind of a jury is far more easily affected by tangible objects or documentary evidence than by oral testimony— evidence given formulation only at the moment of the trial. Especially in determining the credibility of witnesses, the contents of documents

written out perhaps before the suit arose, or prepared by persons in no way interested in the outcome of the suit, are commonly very influential, or even decisive, with jurors, as affording a test of who is lying and who is telling the truth. No form of evidence is commonly given more weight, in the determination of whose oral testimony is to be believed and whose rejected, than the silent narrative furnished by the contents of documents, the circumstances of whose origin were such as to negative all possibility that their contents were influenced by any exigency of the litigation. For the mute confirmation afforded by the contents of such a document, a jury has far more respect than for any technical rule of evidence which may exclude it from them, and it is elementary that under such circumstances it becomes the especial duty of counsel to see to it that the contents of writings which go to the vitals of the case are not brought to the knowledge of the jury unless and until the writings themselves are received in evidence.

In the case at bar the credibility of the plaintiff and his witnesses, as compared with that of the defendant's witnesses, was the sole issue in the case. This issue arose as to two questions: (1) The manner in which the accident happened; and (2) the extent of the plaintiff's injuries, the duration of his enforced idleness, and the diminution in his earning power after he resumed work. Upon both of these matters the testimony of the plaintiff, confirmed in substantial portions by the testimony of other witnesses who bore some personal or business relationship to him, was clear, explicit, circumstantial, and convincing, so much so that it inevitably became the principal contention of the defendant's counsel that the plaintiff's whole case was willfully perjured and that its circumstantial details were, to use the phrase of the defendant's brief, "creatures of the imagination of some one possessed of a more fertile intellect." The testimony as to the extent of his injuries, the period of his idleness, the place at which he finally resumed work, and his diminished earnings thereafter was equally explicit and detailed with that which he gave as to the happening of the accident; if one seemed true, the other seemed likewise true; and, if the plaintiff's version of the accident were to be believed by the jury, the conclusion was irresistible that the defendant had been guilty of negligence.

Under these circumstances, the defendant's counsel placed on the stand Mr. Greenberg, of the firm of Greenberg & Co., and Miss Dunkelman, an employé of Zucker Bros. The plaintiff had testified that, when he did return to work, he returned for a while to the position which he formerly had with Greenberg & Co.; that subsequently he went to work for Zucker Bros.; and that his weekly earning power and earnings were substantially less than before the accident. By certain documentary evidence produced by Mr. Greenberg, the defendant sought to show that the plaintiff did not go back to work for Greenberg & Co. after the accident; also what the plaintiff's earnings had been before the accident. By certain documentary evidence produced by Miss Dunkelman, the defendant sought to show that the plaintiff went promptly to work for Zucker Bros. after the accident, worked

there two months beginning August 26, 1912, and earned no less than before the accident. The admission of this testimony, where the witnesses themselves had no recollection of the matters sought to be proved, presented the usual intricate questions as to the status of imperfectly identified secondary records, made up from time slips not produced and whose accuracy was not attested; even the name of the workman being, in at least one of the two cases, "Aufman," rather than "David Hoffman," the plaintiff's name. Rightly or wrongly, the trial court held that essential elements in the foundation for the admissibility of this very vital testimony had not been furnished, and the evidence was excluded. Again, on the afternoon of the same day, the defendant's counsel placed the same witnesses back on the stand, and, without supplying the deficient elements in the formal proof, again offered the documents in evidence. After an extended discussion before the jury, the objections of the plaintiff's counsel were again sustained and the evidence excluded.

The defendant's counsel thereupon had before him a choice of alternatives: (1) Endeavor to supply the additional elements which the court held essential to the receipt of the book entries in evidence, even though he may have deemed the court's ruling erroneous; or (2) bide his time and present on appeal, if need be, his contention that he had laid the necessary foundation for their receipt in evidence. He had no right to proceed adroitly to get the substance of the book entries, or his own unexamined version of them, before the jury and the court, yet that is what he did do, leading the jury irresistibly to the conclusion that the plaintiff and his counsel had been "trapped" and that the whole fabric of the plaintiff's case was perjured. He did this, in the first instance, by statements made in arguing the admissibility of the documents. Instead of addressing himself to the evidentiary question under consideration, and carefully avoiding statements which would even indicate their contents, he addressed himself to stating their contents. For example, when the court endeavored to elicit upon what phase of the case the testimony was sought to be introduced, the following colloquy occurred:

"Mr. Wintner: I object to those going in evidence on the ground those books are transcripts of original entries which can be produced and are not evidence of the transactions. The Court: For what purpose are the books offered? Mr. Edwards: I propose to show this man worked there commencing August 26th. Mr. Wintner: I object. The Court: For what purpose? Mr. Edwards: To show he worked from August 26th to October 24th, and his earnings were the same as they were before the accident."

Counsel's persistence in stating the contents of the documentary evidence, over the plaintiff's objections to such statement, made at the time, created irresistibly the impression that the plaintiff had willfully lied (1) as to the place where he went back to work; (2) as to the time when he went back to work; and (3) as to the reduced amount of his earnings after such return. From this conclusion of perjury as to these matters followed the natural inference of perjury as to the manner in which the accident happened. To quote the language of defendant's counsel:

"The jury had a right to say that, if this man lied about those things for the purpose of enlarging his damages, he must have lied about how the accident happened."

It is worthy of note, in this connection, that although the defendant's counsel stated before the jury, as above quoted, that the books showed that the plaintiff "worked there commencing August 26th, * * * worked from August 26th to October 24th," defendant's counsel states now in his brief to the court upon this motion that he "was prepared to show by the books that the plaintiff went to work for Zucker Bros. and worked a full week ending August 26, 1912." The fact that the court asked the question to which the defendant's counsel replied by stating the detailed contents of the documents rather than the phase of the case to which the testimony, if received, would be addressed does not lessen the trial court's responsibility for the obvious results of the reply which its question elicited. The failure of the stenographer's notes to show the full colloquy and the reiteration which took place of both the objectionable statements and the plaintiff's objections thereto also makes the situation peculiarly one with which the trial court ought itself to deal.

When defendant's counsel began to sum up the case to the jury, he again stated in substance what he believed the books would have shown, had they been received in evidence, and said that he regretted the court's ruling that the jury could not have these documents, conclusive upon the plaintiff's perjury, before them in the jury room. To this statement the plaintiff's counsel promptly and strenuously made objection, and the court interrupted the defendant's counsel, who insisted that he was within his rights and should be permitted to proceed. The court specifically warned and instructed him that he could not offer documents in evidence without laying proper foundation therefor, and then go ahead and base arguments on their contents after they had been rejected. The court directed the jury to disregard the remarks of counsel, and further intimated to counsel that, if the objectionable remarks were repeated, the court would be compelled to declare a mistrial in the case. The court very seriously considered, at that moment, whether the matter had not gone so far that a mistrial ought to be declared. That the plaintiff's counsel did not ask, and the court did not direct and see to it, that the stenographer take notes of this incident of the summation, and that accordingly the plaintiff's objections and exceptions to the defendant's counsel's remarks do not appear in the stenographer's notes of the trial, makes the matter still further one to be dealt with by the trial court, as the record will not adequately present the matter on appeal.

Must the trial court presume that the efforts which it made to induce the jurors to disregard and dismiss from mind the improper statements were wholly ineffectual, or may it set the verdict aside if convinced that its efforts were not effectual? I think that, by the undoubted weight of American authority, the trial justice has both the right and the duty to vacate the verdict. In Illinois it has repeatedly been held that to base argument upon, or draw inference from, excluded testimony in addressing the jury is an "improper and pernicious practice"

which constitutes ground for vacating a verdict in favor of the party whose counsel so offends. Chicago & Milwaukee El. R. R. Co. v. Judge, 135 Ill. App. 377; Parlin & Orendorff Co. v. Scott, 137 Ill. App. 454; Wicks v. Wheeler, 139 Ill. App. 412. The rule is clear in Illinois that the united efforts of the court and counsel to eradicate the effects of the objectionable references will not save the verdict attacked, if it appears that the matters brought in from outside the record were of such a prejudicial character as not certainly to have been effaced from the minds of the jury by what the court did to that end. Donk Bros. Coal & Coke Co. v. Tetherington, 128 Ill. App. 256. Reading from a paper not received in evidence is held reversible error in Pennsylvania (Mullen v. Union Cent. Life Ins. Co., 182 Pa. 150, 37 Atl. 988); stating the contents of a paper not received in evidence is held ground for reversal in Vermont (Blaisdell v. Davis, 72 Vt. 295, 48 Atl. 14). In Connecticut a verdict was set aside because counsel for the successful party expressed, in his argument to the jury, as did counsel for the defendant in the present case, his regret that certain documentary evidence upon an important phase of the case had been excluded, and therefore would not be available to aid the jury in their deliberations. Matter of Hine's Appeal, 68 Conn. 551, 37 Atl. 384; Hoxie v. Home Ins. Co., 33 Conn. 471. In North Carolina a new trial was ordered because counsel, in his argument to the jury, endeavored, as did counsel for the defendant in the present case, to undermine the credibility by reading or stating the contents of a paper which had not been received in evidence. State v. Bryan, 89 N. C. 531. In Nebraska the rule is clear that an attorney will not be permitted, in his argument to the jury, to make assertions or even insinuations as to what facts would be shown or inferences supported by documentary evidence excluded, and that a new trial will be directed if it appears that the statements were of such a character, and upon such an issue, as may reasonably be supposed to have influenced the jury. Cleveland Paper Co. v. Banks, 15 Neb. 20, 16 N. W. 833, 48 Am. St. Rep. 334; Festner v. Omaha & S. W. R. R. Co., 17 Neb. 280, 22 N. W. 557. In Texas it is held that where counsel states to the jury facts not in evidence, but calculated to prejudice the jury, a new trial will be ordered, even though the opposing counsel made no objections and took no exceptions at the time. Prather v. McClelland (Tex. Civ. App.) 26 S. W. 657. In Washington it is held that the statement by counsel, before the jury, of the contents of a document which had been rejected when offered in evidence, and was marked for identification only, constitutes grounds for a new trial; the Washington court accurately pointing out that "in a close case" it may well be that these references to the contents of excluded documents "may have furnished the quantum of evidence which demolished the plaintiff's case and turned the verdict." Cohen v. Droke, 13 Wash. 102, 42 Pac. 529. The Missouri courts have taken substantially the same view. Haynes v. Town of Trenton, 108 Mo. 123, 18 S. W. 1003. In New Hampshire it has been held that a verdict induced or influenced by references to excluded evidence should be set aside. Bullard v. Boston & Maine R. R. Co., 64 N. H. 27, 5 Atl. 838, 10 Am. St. Rep. 367; Baldwin v. Grand

Trunk R. Co., 64 N. H. 596, 15 Atl. 411. The reason why a trial in which counsel acquainted the jury with the contents of vital documents denied admission to the record cannot be regarded as a fair trial, and the reasons why the court cannot presume that the efforts made to eradicate the effects of the improper statements were wholly effectual were clearly stated by the New Hampshire court, as follows:

"In a legal sense a trial is not fair when such statements as were made in this case have any influence favorable to the party making them. He is therefore bound to do everything necessary to be done to rectify his wrong, and restore to the trial the fairness of which he has divested it. He is legally and equitably bound to prevent his statement having any effect on the verdict. This he cannot do without explicitly and unqualifiedly acknowledging his error, and withdrawing his remarks in a manner that will go as far as any retraction can go to erase from the minds of the jury the impression his remark was calculated to make. But it is by no means certain that the jury will, at his request, disregard the facts stated. It is necessary that they should be instructed that the unsworn remark is not evidence, and can have no weight in favor of the party improperly making it. It is the duty of the wrongdoer to request such instructions. The other party does his duty when he objects to the wrong inflicted upon him, and does not allow it to be understood that he waives his objection. In spite of the fullest and frankest retraction, and the most explicit and emphatic instructions to lay the remark entirely out of consideration, the trial may not be fair. It may not be in the power of the retracting counsel and the court to remove the prejudice. * * * The jury may not be able wholly to free their memory or their judgment from the unfair and illegal impression made by a plausible statement of fact, which may seem to them entitled to more respect than the rule of law that excludes it. The statement, withdrawn not because it is contrary to the fact, but because it is not a legal mode of proving the fact, may do as much damage as if it had not been withdrawn."

It will be noted that, in the case at bar: (1) Counsel for the defendant at no time acknowledged either the incorrectness of his purported statements of fact as to what the documents showed or the impropriety of his making such statements. (2) He did not ask the jury to disregard his erroneous statements or ask the court to instruct the jury to disregard them. (3) Although the admission or rejection of the books was the most conspicuous and hotly-fought issue of the trial, the jury was enjoined on only one occasion to disregard what defendant's counsel had said were the contents of the books. (4) No one ever suggested to the jury that what defendant's counsel had said as to the contents of the books was untrue; the impression was left that the truth had been excluded from the case for purely technical reasons.

The leading American decision upon the subject is the luminous opinion of Chief Justice Ryan of Wisconsin, in Brown v. Swineford, 44 Wis. 282, 28 Am. Rep. 582. The Wisconsin court held that it was "error sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue and not in evidence, or to assume arguendo such facts to be in the case when they are not." The learned court also stated the reasons why the fact that efforts were made, on the trial, to eradicate the effects of the objectionable conduct of counsel cannot be deemed necessarily effectual to that end. "Doubtless the circuit court can," said Chief Justice Ryan, "as it did in this case, charge the jury to disregard all statements of fact not in evidence. But it is not so certain that a jury will do so. Verdicts are too often

found against evidence and without evidence, to warrant so great a reliance on the discrimination of juries. And, without notes of the evidence, it may be often difficult for juries to discriminate between the statements of fact by counsel, following the evidence and outside of it. It is sufficient that the extraprofessional statements of counsel may gravely prejudice the jury and affect the verdict."

It remains to consider whether there is merit in the suggestion that a different rule as to the power and duty of the trial justice must be regarded as established in New York. The status of such a verdict on appeal seems to have been first discussed in Gould v. Moore, 40 N. Y. Super. Ct. 387, where the defendant asked to have a judgment reversed "because the plaintiff's counsel, in summing up to the jury, referred to matters which, when offered in evidence, had been excluded by the court." Mr. Justice Curtis stated the applicable rule of law to be:

"To allow matters excluded as evidence, to be referred to, or presented, in summing up, so as to affect the deliberations of the jury, or to influence their passions or prejudices, or otherwise to lead them from the line of duty pointed out by their oaths, is at variance with the primary principles of justice. Acts of this kind lead to unjust verdicts, and, where they have the sanction of the judge, call for a reversal of the judgment. * * * But it must be observed that the present case differs in these respects from those referred to. There is no exception, and none could be made, as the ruling was in defendant's favor. Again, in the reference (on two occasions) by defendant's counsel, in his summing up, to matters which had been excluded when offered in evidence, the case shows that such reference was promptly objected to, and immediately rebuked by the court, and not persevered in by the defendant's counsel. Under such circumstances, unless it was apparent that such reference was made in bad faith, and may have prejudiced the objecting party with the jury, a reversal is not called for. The defendant fails to show that he was, or could have been, prejudiced with the jury, by the reference to these matters by the counsel, nor is it easy to see how he could be, while there is nothing in the case that establishes that the reference to these matters by counsel was anything more than a misapprehension as to the evidence."

In the case at bar it appears clearly (1) that the references to the extraneous matters were made in palpably bad faith, with plain purpose to prejudice, and with clear knowledge that the documents whose contents were stated had been explicitly rejected when offered, and (2) that such references practically beyond peradventure prejudiced the jury against the plaintiff, because indicating him to be wholly worthy of unbelief upon the vital issues of the case.

In Koelges v. Guardian Life Ins. Co., 57 N. Y. 638, the plaintiff's counsel was permitted, in summing up, to read from and state, after objections, the contents of a certain pamphlet which had been rejected when offered in evidence, although proved to have been issued by the defendant. It was held that "the ruling of the court was error which may have prejudiced defendant," and a new trial was ordered. It has repeatedly been held by the Appellate Division of the Supreme Court that where counsel for the plaintiff has indulged in remarks foreign to the record, for the palpable purpose of prejudicing the jury, a verdict for the plaintiff will be set aside, even though efforts were made by the court to impress it upon the jury that they should disregard such im-

proper statements by counsel and be governed by the evidence alone. The error is not deemed necessarily cured and the prejudice necessarily removed by the court's endeavors to that end. Bagully v. Morning Journal Ass'n, 38 App. Div. 522, 56 N. Y. Supp. 605; Halpern v. Nassau Electric R. R. Co., 16 App. Div. 90, 45 N. Y. Supp. 134; Benoit v. New York Central & Hudson River R. R. Co., 94 App. Div. 25, 87 N. Y. Supp. 951; Strickland v. New York C. & H. R. R. R. Co., 88 App. Div. 367, 84 N. Y. Supp. 655; Stewart v. Metropolitan St. R. Co., 72 App. Div. 459, 76 N. Y. Supp. 540. In the Bagully Case, supra, a new trial was directed even where the plaintiff's counsel himself withdrew his offending remarks and asked the jury to disregard them. In the Stewart Case, supra, a new trial was directed by the Appellate Division, even though the trial justice certified that the plaintiff's counsel went outside the record only "inadvertently," and that, "the court having promptly corrected his statements, I am entirely satisfied that no prejudicial effect was exerted upon the jury." In the Stewart Case the extraprofessional references to rejected testimony created the impression that the defendant had deliberately concealed witnesses; in the case at bar the statements were even more grievous, in that they created the impression that the plaintiff had "deliberately lied to increase his damage." More recent decisions to similar effect are Horton v. Terry, 126 App. Div. 479, 110 N. Y. Supp. 646; Mullarkey v. Interurban St. R. Co., 48 Misc. Rep. 638, 96 N. Y. Supp. 115. If this wholesome rule has been so many times held to require the reversal, on appeal, of a verdict which the trial court has declined to set aside, particularly a verdict for the plaintiff in a negligence action which will be subjected to strict scrutiny as to the weight of evidence sustaining it, how much more certainly ought this rule to be applied to a judgment for the defendant, which is claimed to stand upon an especially favored basis as regards the weight of evidence, and this when the verdict is attacked in the trial court itself, which is of the opinion that the plaintiff was grievously prejudiced by the extraprofessional statements to which objection was taken?

I find nothing contrary to this view in Dimon v. New York Central & Hudson River R. R. Co., 173 N. Y. 356, 66 N. E. 1, Chesebrough v. Conover, 140 N. Y. 382, 35 N. E. 633, or Cole v. Fall Brook Coal Co., 159 N. Y. 59, 53 N. E. 670. In the Dimon Case the Court of Appeals held that its power to review a judgment was necessarily based upon objections made and exceptions taken on the trial, and that it could not find in the record there presented any proper exception which enabled it to predicate a reversal of the judgment on the character and tendency of the closing address of the plaintiff's counsel to the jury. The Chesebrough and Cole decisions, supra, indicate that misconduct of counsel on the trial is primarily and preferably a matter to be dealt with by the trial court, rather than upon appeal. See Chesebrough v. Conover, supra, 140 N. Y. 389, 35 N. E. 633; Cole v. Fall Brook Coal Co., supra, 159 N. Y. 65, 53 N. E. 670. The opinion in the Cole Case does not, as I read it, go further than to hold that a motion for a new trial, on the ground that improper statements were made of matters not in evidence, is addressed, in the first instance, to

the discretion of the trial court, and that no question is presented for review in the Court of Appeals, if the trial court sustained every objection of the aggrieved party, made suitable endeavors to eliminate the improper matter from the minds of the jury, and itself was of the opinion that the improper matter had no injurious effect warranting a new trial. I cannot regard that holding as adverse to the power of the trial justice upon this application.

Under the view above taken, it is unnecessary to discuss at length the question whether the verdict was so shockingly against the weight of evidence as to require the trial court, as a matter of conscience and substantial justice, to set the verdict aside. I am of the opinion that such was the case, and the order vacating the verdict may so recite. A careful reconsideration of the testimony actually received in the case, the appearance and manner of the witnesses while testifying, and the whole atmosphere of the trial convinces me that to permit this verdict to stand would amount to a substantial denial of justice to this plaintiff.

The fact that the trial counsel for the defendant in this case is a young man whom I hold in high regard and do not believe would be deliberately guilty of a violation of proper professional standards does not lessen the duty of the trial court to disapprove a practice which has become too common or impair its obligation to see to it that this plaintiff's claim is not defeated except in accordance with the recognized rules for orderly conduct of trials. As has been said by the Appellate Division for the fourth department:

"There is no reason for further words on the subject. The court should act by setting aside verdict where this improper practice is employed."

The verdict of the jury is accordingly set aside, without costs, and a new trial ordered. The case may be restored to the day calendar for trial on any day of the present term which may be agreed upon by counsel and incorporated in the order entered hereon.

Ordered accordingly.