FLORENCE NICHOLAS, an Infant, by CHRIS NICHOLAS, Her Guardian ad Litem, et al., Appellants, *v.* ELIOT ROSENTHAL, Respondent.

First Department, November 24, 1953.

*Leo S. Marcus* for appellants.

*Frederick Mellor* for respondent.

COHN, J. Plaintiff, a child nine and a half years of age, came in contact with defendant's automobile and was seriously injured while she was attempting to cross a street in the borough of Manhattan, city of New York. According to her testimony, she had walked out from between two parked cars. When she reached a point about two feet beyond the line of the parked cars, she stopped to look for traffic coming in either direction. Noticing a car 100 feet away coming toward her quite fast, she remained standing in order to permit the vehicle to pass, but she was struck down by defendant's car. Her testimony as to how the accident occurred was substantially corroborated by an adult neighbor.

Defendant testified that at the time of the accident as he was driving his automobile on the street at the rate of twenty miles per hour, he first saw plaintiff coming from between two parked cars at a point five or ten feet in front of him. He then applied his brakes and swerved to the left, but the girl, " hit the front right fender ". He traveled some fifteen feet after he had come in contact with the child.

There was no other evidence as to how the accident occurred. The issues of negligence on the part of defendant and contributory negligence of the infant plaintiff were thus sharply drawn. The jury rendered a verdict in favor of defendant. Under ordinary circumstances we would be disinclined to interfere with the verdict of the jury save for the prejudicial conduct of defendant's counsel.

Near the end of the case there was injected matter of a highly improper nature which doubtless influenced the jury. In his zeal for the success of his client's cause, defendant's counsel called as his witness a Mrs. Meltzer. He had subpœnaed her. Apparently he was aware of the fact that she had not seen the accident and that she had no personal knowledge of what had taken place for he had in his possession a written statement to that effect obtained from her by one

of his investigators long before the trial. Upon inquiry, he established that at the time of the accident she lived on the street where the accident occurred; that her children played with the infant plaintiff; and that plaintiffs' family were her neighbors. After Mrs. Meltzer had protested she did not see anything, that she was in the house, he then proceeded to cross-examine her. When objection was made, counsel stated: "Under a provision of the Civil Practice Act, with your Honor's permission, I expect to confront this witness with a paper, and I feel that she is a hostile witness, and I have to do this."

Then the following occurred: "The Court: Under Section 343-A, you may impeach her by a written instrument, or a document under oath."

Defendant's counsel: "That is what I am basing these questions upon, sir."

Thereupon counsel put a series of questions to the witness calculated to create the impression that she had seen the accident while looking out of the window of her second floor apartment observing her two daughters playing on the sidewalk with plaintiff. Again the witness specifically stated that she had not seen the accident, nor did she, according to her testimony, ever tell anyone that she "had an excellent view of this accident" from her front window. She did testify that on hearing the screeching of an automobile, she went to the front window and saw plaintiff "laying on the ground" after the accident.

Counsel was obviously creating the impression that Mrs. Meltzer knew something that was detrimental to plaintiffs' case but was withholding it from the jury. He continued to cross-examine the woman and when objection was again made to the procedure, he offered in evidence the written statement in his possession. It contained nothing contradictory. There were some conclusions in the writing based on hearsay testimony that were patently inadmissible. The court, after examining the paper, very properly excluded it but permitted it to be marked for identification. The statement did not reveal that the witness had seen the accident. It did, however, contain a declaration to the effect that the witness' daughter had observed plaintiff run between two parked cars and that plaintiff was then struck by defendant's car.

Defendant's counsel, an experienced attorney, knew that the paper was incompetent and inadmissible when he made

the offer, but his strategy was obviously designed to lead the jury to believe that this witness, placed upon the stand by him, and whom he had characterized as a hostile witness, would be confronted with her written statement to the effect that she herself had seen the accident and knew just how it had occurred, when in fact it showed that she did not know. The defendant's counsel in offering the paper in evidence "so that the jury can see it" made the gratuitous suggestion before the jury that the contents of the paper showed that " her own daughter " had told Mrs. Meltzer what had happened.

Here the impression before the jury was created that this witness knew something of disadvantage to the plaintiffs' case; that such knowledge was material; that she was disclaiming such knowledge because of friendship with the plaintiffs; and that defendant's attorney had written proof of that fact which the jury was not permitted to see because of some legal technicality. Clearly there was an attempt being made to get before the jury evidence which defendant's counsel knew to be incompetent for the ulterior purpose of creating a false impression on the part of the jury that fair evidence was being kept out on purely technical grounds. Conduct of this kind may not be countenanced and warrants the reversal of a judgment entered on a verdict so obtained. (*Cosselmon* v. *Dunfee,* 172 N. Y. 507; *Cohen* v. *Covelli,* 276 App. Div. 375, 376; *McCormick* v. *Merritt,* 232 App. Div. 619, 623; *Walter* v. *Joline,* 136 App. Div. 426, 429; *Hoffman* v. *New York Rys. Co.,* 84 Misc. 637.)

True it is that plaintiffs' attorney made no request for a mistrial. Any such move on the part of plaintiffs' counsel in this case would have served only to emphasize the improper evidence. Absence of such a motion, does not preclude us from protecting a litigant in his right to a fair trial. Though no motion for mistrial was made and no exception taken to the conduct of counsel, where, as here, this court is satisfied that a verdict may have been induced by conduct creating and calculating to create prejudicial misapprehension, mistake or false impression on the part of a jury, such verdict may not be permitted to stand. (*N. Y. Central R. R. Co.* v. *Johnson,* 279 U. S. 310, 318; *Cosselmon* v. *Dunfee,* 172 N. Y. 507, *supra;* *Devery* v. *Catello,* 278 App. Div. 672; *Abbate* v. *Solan,* 257 App. Div. 776; *Regan* v. *Frontier Elevator & Mill Co.,* 211 App. Div. 164.)

Courts of justice exist for the purpose of securing a fair determination of controversies. When counsel resort to improper practices to win a verdict, they imperil the verdict which they thus seek. In view of the fact that the finding of the jury in this case was undoubtedly influenced by the improper tactics of counsel, it should be set aside and a new trial ordered.

The judgment should be reversed and a new trial ordered, with costs to the appellants to abide the event.

PECK, P. J., DORE, CALLAHAN and BERGAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.