Saypol, J.
Irving Freeman was injured, while riding as a passenger in the taxicab operated by William Alexander for its owner, Manhattan Cab Corp., when there was a collision with the automobile truck operated by Louis Colacci for its owner, Red Star Express Lines of Auburn, Inc. Four days later Freeman died, survived by his widow and the son of a prior marriage. She sued both owners and their drivers. After trial to a jury its verdict was in favor of the plaintiff suing as administratrix of her deceased husband’s estate, recorded on the Judge’s minutes, as follows: clebii : Members of the jury, hearken to your verdict as it stands recorded. In the cause of action for pain and suffering, you find a verdict in favor of the plaintiff in the sum of $4,500 against the defendants Red Star-Express Lines of Auburn, Inc. and Louis Colacci, and you therefore find a verdict in favor of the defendants Manhattan Cab Corporation and William Alexander. And on the cause of action for wrongful death you find a verdict in favor of the plaintiff for $70,000 against the Red Star Express Lines of Auburn, Inc. and Louis Colacci, and you therefore find a verdict in that cause of action in favor of the Manhattan Cab Corporation and William Alexander. And upon all those verdicts so say you all.
“ foreman: Right.”
*603 Three motions after the verdict remain for decision, expressed as follows:
1. ‘ ‘ mb. geoghaet : The defendants Bed Star and Louis Colacci move to set aside the verdict, first on the ground that the original verdict as rendered by the jury was an inconsistent verdict and in counsel’s opinion was not corrected by further deliberation, in view of the fact that at that time, when they announced a verdict against the defendant Bed Star, there was some doubt, and no verdict against the defendant Louis Colacci. Defendant Bed Star and Louis Colacci submit that that portion of the verdict or that verdict was an inconsistent one. ’ ’
2. ‘ ‘ The defendants Bed Star and Louis Collaci move to set aside the verdict on all of the grounds specified in Section 549 of the Civil Practice Act with the exception of inadequacy.”
3. ‘‘ mb. lipsig : On behalf of the plaintiff I move to set aside the verdict in favor of the defendant Bed Star and in favor of the defendant Alexander, on the ground that it’s against the evidence and on the ground —
“ the court: In favor of the defendant Bed Star?
“ mb. lipsig : I mean Manhattan, on the ground that it’s against the evidence, against the weight of the evidence, and upon all the grounds set forth in Section 549 of the Civil Practice Act except excessiveness.”
Those motions of the parties, numbered two and three, pursuant to section 549 of the Civil Practice Act, as they are couched in stereotyped, vague and general form without specification and particularization would alone present no difficulty. The defendants withdrew their defenses of contributory negligence at the close of the evidence. But the first motion of Bed Star and Colacci gives a hint of incidents in the trial which may impugn the validity of the verdict. The doubts arise from the effects of plaintiff’s attorney’s conduct in an atmosphere of fulsome over-larding.
The trial proceeded without undue incidents. Both drivers, although codefendants, were put on the stand by the plaintiff. There was the usual byplay to the jury by zealous, experienced counsel, sometimes with a display of cavil, sometimes with gestures of Chesterfieldian suavity and deferment to jury and adversary. Those are matters of individual preference, perhaps idiosyncrasy, but tolerable to a point and therefore unimportant. The straining point was reached when at the conclusion of the defendants ’ summations, the plaintiff’s counsel rose, presumably to make his closing argument to the jury. Instead, in solemn mien, in a voice seemingly choking with tragedial emotion he *604 declared himself in these words: “ me. lipsig : There is one statement I’d like to make on the record before I start to sum up, your Honor. My client Anne Freeman has asked me to discontinue this case against the two drivers, Louis Colacci and Mr. Alexander.” Counsel for Bed Star and Colacci objected and protested too, here and later, and plaintiff’s counsel was admonished. The right to discontinue was not absolute (Buies Civ. Prac., rule 301), as counsel contended at the trial and in his subsequent brief. ■ The wisdom of the amendment to the rule, to avoid prejudice, is graphically portrayed in this trial and there is much force to the defendants ’ arguments, e.g., that their trial course and strategy was dictated by the state of the case when the individual defendants were called as plaintiff’s witnesses; in addition to the emotional impact of the plain hint by the plaintiff to the jury that its consideration would be limited to inanimate corporations because of the gracious offer to withdraw the case against the individual defendants. It occurred too to the court at this point, although the objecting defendant did not say that until later, that the consequence of discontinuance might be a required ruling on an appropriate motion to strike the testimony of these defendants (much of it received without objection because they were parties) and thereby to weaken if not destroy the plaintiff’s case.
The plaintiff proceeded to his summation and concluded in the following words:
“ me. lipsig: I know that whatever you’ll do in this case you’ll do in all good conscience. Don’t give Anne Freeman or Harry Freeman or this man for his pain and suffering one penny that they don’t deserve. But with all that we know of human beings, give them every penny that they should get.
‘ ‘ I say to .you a verdict in this case for this pain and suffering that penetrated that man’s consciousness even after he passed beyond the state of con — even partial consciousness, a verdict of $50,000 for that pain and suffering would not be unfair in the light of what that human being went through. And a verdict in the action for damages of — for wrongful death of $200,000 would in my frankly biased eyes not seem unreasonable.
“ Whatever you do I know you’ll do it in all good conscience. 1 promise you that whatever verdict you render, every penny of it will he collected.
“ But in closing let me just utter these few words. Don’t disagree, and leave the most innocent parties in this case high and dry. ’ ’ (Emphasis supplied.)
The jury was then instructed and at the very outset of the charge to the jury, even though there had been no objection, *605 they were warned to disregard counsel’s assurance that every penny of their verdict would be collected. As to liability the following instruction was given:
" Question, for you: Was the negligence of either or both of these drivers, resulting in the collision, the proximate cause of the injuries sustained by Irving Freeman.
“ If you find that both drivers were negligent, then your verdict will be jointly against all defendants, or you may find that one of the drivers was free from negligence, in which event your verdict would be against the other and his employer, that is, the one you find at fault. Again I say if you find that neither driver was negligent, then you may not find against either or any of the defendants.”
What has been narrated from the trial bears upon succeeding events.
At 6:32 p.m., after several hours of deliberation, the jury returned to report a verdict in the following words of the foreman : ‘ fobemaw : The jury unanimously finds as follows: Against Bed Star for suffering during lifetime, $4,500. Against Bed Star for death of Irving Freeman, $70,000.” The clerk, recognizing the apparent defects, inquired of the court. Failure to mention defendant Bed Star’s codefendant driver Colacci was potentially inconsistent and vitiating as to Bed Star’s liability (Pangburn v. Buich Motor Co., 211 N. Y. 228). And no mention of the remaining defendants also meant an incomplete verdict. The clerk was directed to repeat the verdict and did so, supplying the missing elements as he assumed, including a finding against the defendant Colacci and an exoneration of the other defendants. Thereupon, before the jury’s acknowledgment for recordation of the verdict, the following colloquy ensued:
‘ ‘ mb. geoghaw : If your Honor please, I would like to know if the verdict is against Louis Colacci in addition.
“ the coubt: Mr. Foreman, will you answer that inquiry? When you say against Bed Star, do you find against Colacci also ? If you are in doubt I will let you retire and discuss it with the jury. Are you in doubt, Mr. Foreman?
“ fobemah: Yes. Yes, sir.
“ the coubt: You’d better retire.
‘' mb. lipsig : Before —
“ the coubt: Yes, Mr. Lipsig?
“ mb, lipsig: Before they retire, in view of your Honor’s ruling on my application to discontinue, I respectfully —
‘' the coubt : That will not be repeated.
£ £ mb. lipsig : May I make my application?
1 £ the coubt : No, sir; in the absence of the jury.
*606 ‘ ‘ MB. LIPSIG : I —
‘ ‘ the court : I say in the absence of the jury you may.
‘ ‘ mr. lipsig : I want to say something innocent, your Honor.
“ the court: Please, sir, I have instructed you. Will the jury retire, please, and deliberate on the question of whether or not that verdict includes the defendant Colacci.
“ (At 6:36 p.m. the jury again retired, and the following proceedings were had without the jury:)
“ the coubt : Now what is it you want to say, sir? ” * * *
“ mb. lipsig: I respectfully ask the Court to recall the jury and in view of the fact that the Court has not granted my absolute right to a discontinuance, to instruct the jury that since they have found a verdict against the Red Star, that consistency requires that the verdict be also against the defendant Louis Colacci.
“ mr. geoghan: I oppose that, sir, on the ground that the application to discontinue against Louis Colacci would include in such an application a consideration of my motion to strike all of his testimony with respect to — or strike all of the testimony in the case with respect to conversations with third parties, as not being in the case. And I might say further that that testimony having been received during the trial and the jury having heard it, to permit a discontinuance of the action against Colacci, after all of that has gone before this jury, would seriously prejudice the defendant Red Star, since such testimony wouldn’t even have been before the jury if the action against Colacci hadn’t been in this case throughout the case. And I say that the application to discontinue is not timely in view of the testimony in this case with respect to conversations.
‘‘ the coubt : I will reserve my ruling on the subject and wait and see what the jury does. ” * * *
“ (Thereupon the jury returned to the box.)
‘ ‘ the court : The record will show that the jury has returned. Mr. Clerk, you will inquire.
“ clerk: Members of the jury, have you agreed upon a verdict ?
“ foreman: We have.
“ clerk: How do you find, Mr. Foreman?
“ foreman : The jury unanimously finds as follows: Against Red Star and Louis Colacci for suffering during lifetime, $4,500. Against Red Star and Louis Colacci for death of Irving Freeman, $70,000.
“ clerk: How do you stand on that? How do you— Unanimous, ten to two ?
‘ ‘ foreman : Unanimous. The jury unanimously finds.
*607 ‘ ‘ the court : Let it be recorded.
“ mr. geoghan" : Might I inquire the verdict as to Manhattan and Alexander ?
“ the court : Do you desire an inquiry to be made?
“ mr. geoghan : As to what their verdict —
“ the court : What is your verdict, Mr. Foreman, with respect to the defendants Manhattan Cab Corporation and William Alexander?
“ foreman : There was no award from them.
" the court : You mean— Does counsel desire further inquiry?
" mr. geoghan: Well, I want to know if they found in favor of the defendants —
‘ ‘ the court : Have you found, Mr. Foreman, that the plaintiff has not proven negligence against the defendants Manhattan Cab Corporation and William Alexander?
" foreman : That is what we found.
" the court: Very well. Then record the verdict if you will, Mr. Clerk.”
The positions of the respective parties may be summarized. Bed Star and Colacci say that necessarily summing up first they had no chance to answer the plaintiff’s summation; the injection before plaintiff’s summation of the offer to discontinue as against the individual defendants together with the promise in summation to collect the verdict was prejudicial, in that the former (to which there was timely objection) was, as I understand their argument, an attempt to distort the jury’s per spective by limiting the case to corporate defendants and that, they say, was proven by the first report of the jury which was against Bed Star alone. They buttress this with the point that the offer to collect every penny (to which there was no objection, never theless the court’s instructions were appropriately given) conveyed to the jury that the defendants were insured. Thus they say the verdict unfavorable to them was unfair for the misconduct of plaintiff’s counsel and they would have it set aside for a new trial. Of the verdict in Manhattan’s favor they say nothing. Defendants Manhattan and Alexander, being exonerated, are understandably satisfied with the verdict. They say the evidence fully supports the result and if there was any impropriety or wrong, as such occurred, the attempted discontinuance, the promise to collect and the first incomplete report of the jury were cared for and cured by the court. The plaintiff makes an ad hominem excuse for promising to collect — that ‘ ‘ actually, this is a promise frequently made by the various trial men, in this State, and has never been considered improper. *608 This is best emphasized by the fact that although both sets of attorneys were represented by seasoned trial men, neither of the two thought the remark called for an objection or a motion for a mistrial.” On the incident before summation, aside from arguing the mistaken notion of the absolute right to discontinue, the plaintiff disputes the likelihood of prejudice.
The separate incidents, the gratuitious offer in the jury’s presence to relieve the individual defendants, the assurance at the end of the- plaintiff’s summation of collection of the jury’s award and the jury’s first report must be considered each alone and in fusion. The plaintiff need not have joined the drivers as defendants but then, as Bed Star and Colacci argue, their course would have been different. How different is debatable for in any event, as parties, their testimony, upon objection, when not binding on their employer defendants, would have been limited as their own admissions (Schner v. Simpson, 286 App. Div. 716) and the jury so cautioned. Although that kind of subtlety as a distinction (cf. Resto v. Met. Dist., Inc., N. Y. L. J., Dec. 17, 1954, p. 6, col. 8) may be lost to a jury, still it would be an affected defendant’s right.
It is generally held that counsel in summation may properly refer to the amount of damages sought by his client (88 C. J. S., Trial, § 192) but not improperly (op. cit. n. 85, citing Nicholson v. Nicholson, 22 S. W. 2d 514, 517 [Tex.]). From Nicholson the rule of conduct may be repeated: ‘ ‘ Briefly and in substance, the rule is that, where improper argument has been indulged in by an attorney and the question properly presented, the complaining party is entitled to a reversal of an adverse judgment, if, under all the circumstances, there is any reasonable doubt of the harmful effect of such argument, and that, whether there is such reasonable doubt, is a question of law and not of fact. ’ ’ Of the assurance to the jury that every penny would be collected, a statement to a jury from which an inference may be drawn that the defendant is wealthy or insured is wrong (Copp v. Ross, 236 App. Div. 636). And in a case where insurance was dragged in, even though the objection was expressly waived in the summation but later raised on the motion to set the verdict aside (Saalfeld v. Smith, 281 App. Div. 827) the offense was condemned when reversing for additional reasons. The books are full of citations and discussion of the effect of counsel’s misconduct in summation as perverting justice (Cherry Creek Nat. Bank v. Fidelity & Cas. Co. of N. Y., 207 App. Div. 787; Zemliansky v. United Parcel Service, 175 Misc. 829). It must be apparent on the very face of the thing that assurance of collection by a plaintiff is irrele *609 vant, outside the issues, as wrong as if the defendant were to try to argue his impecuniosity. The self-exculpatory argument that it is a common practice ‘ ‘ by various trial men, in this State, and has never been considered improper ” as evidenced by the failure to object by experienced counsel here is both rejected and condemned in its utterance as to the first premise. Even though none of the defendants objected timely, still that failure might not be enough to save the case for verdicts have been stricken down, regardless of result, despite a lack of exception or even absent a motion for mistrial, because of counsel’s misconduct (French v. City of New York, 286 App. Div. 1085, Nicholas v. Rosenthal, 283 App. Div. 9). It is noteworthy that in French (supra) the Appellate Division in this department in the memorandum of reversal concluded: “ It is doubly unfortunate that this corrective appellate action must be taken and a new trial held because the verdict was amply supported by the evidence. ’ ’
That brings up the question of the effect of the discontinuance manoeuvre as it bears on the jury’s first report after deliberation. Here timely objection had been made. The jury foreman reported a verdict against Red Star alone. This was clearly defective as an incomplete verdict. It was in violation of the charge to the jury; that liability of the defendant owner must follow derivatively from the fault of its defendant driver (Pangburn v. Buick Motor Co., 211 N. Y. 228, supra). That, incidentally, was an additional reason for denying the motion to discontinue when made, as prejudicial (Bessey v. United States Shipping Bd. Emergency Fleet Corp., 204 App. Div. 641) for even before the amendment in 1953 to rule 301 of the Rules of Civil Practice, limiting the right of discontinuance, the potential injustice in a given case was well recognized. What then followed, the inquiries addressed to the jury by the court, in sending it back for further deliberation and in taking the final verdict was, as the record shows, at the express request or with the concurrence of Red Star’s counsel.
The verdict which was recorded, as a general verdict is complete and depending upon the jury’s findings on the facts the validity of which is presumed, entirely consistent. The attack as couched by counsel is against the first one as inconsistent because of no verdict against the driver.
Much has been said and written of the supervisory power of the judge who presides at the trial over the jury’s verdict. In the discharge of his responsibilities, living with it, he has seen from a superior vantage point the interplay among the contestants, the shadings, the nuances and the colorings, of their manipula *610 tion, as staged against the backdrop of the merits. His expected disinterestedness gives a view in reality, otherwise colored to the partisan. True, sometimes in the presence of diversion his human instincts tend to cause a rise as when to quell impropriety in conduct, and then for the moment the judicial perspective may be a little bent because it has been pushed. But not long after, recovery restores that cold, neutral, impartiality of Burke’s. Ordinarily, he is in the better position to determine the validity, the probity of the result, and if not to call it a nullity, in its true light (Kligmam v. City of New York, 281 App. Div. 93). That is a power, however, which should be cautiously exercised (Algeo v. Duncan, 39 N. Y. 313, 316). Of course, if palpably wrong, if instead of a fair consideration of the evidence the jury were confused or steered up a wrong or a blind alley by counsel’s misconduct, it could not stand, as has been said in French (286 App. Div. 1085, supra) and Nicholas (283 App. Div. 9, supra). Of cases dealing with sufficiency of the evidence alone, it has been said that “ [t]he verdict must be demonstrably contrary to the evidence to warrant setting it aside ” by the trial judge (Pate v. City of New York, 106 N. Y. S. 2d 378, 380; Green v. Ontario Co. Agric. Soc., 26 N. Y. S. 2d 261, affd. 258 App. Div. 843). But fair consideration of the evidence alone involves evidence as such, not its distortion and perversion after its elicitation.
The case as viewed by me, in the overall, apart from the diversions of counsel, is like Rush v. Jagels “ A Fuel Corp.” (264 App. Div. 535), where it was stated by Glennon, J., writing for the court (p. 538): “In the present case, a passenger in a taxicab, injured through no fault of his own but as a result of the negligence of one or both drivers of the colliding vehicles, is clearly entitled to recover for his injuries.” Liability in the case at bar was a jury question, as was damage, and based upon the usual factors, the ages of the decedent and his survivors, his station, earnings and potentials and their life expectancies, and the length of his survival and consciousness. The withdrawal of the defense of contributory negligence and the absence of error in law, add to the factors which amply support the verdict as such, so that both motions under section 549 of the Civil Practice Act, should be denied.
The course pursued by the court in the instructions to the jury of its own volition concerning plaintiff’s assurance that he would collect the verdict, despite the absence of objection and without request of defendants ’ counsel, adequately covered the situation (Masterson v. Solomon, 275 App. Div. 861, affd. 300 N, Y, 545). *611 The judicial action with respect to the first incomplete, rather than inconsistent, verdict (in Pangburn [211 N. Y. 228, supra] the jury found against the owner and in favor of its driver; here there was no mention by the foreman of a result as to Red Star’s driver Colacci) at the request of and with the concurrence of moving counsel, was proper and unassailable. Even where a jury has found a verdict which it is its duty to report to the court, but which is not correctly reported, in consequence of mistake, inadvertence, or a lack of familiarity with the duty of jurors, the court has power to correct the record so as to express correctly what the jury has decided. After giving in a verdict, before it is recorded, a jury may be sent back to reconsider it; not only to correct a mistake in form, or to make that plain which was obscure, but to alter it in substance if they so determine and agree (Warner v. New York Central R. R. Co., 52 N. Y. 437, 440; Porret v. City of New York, 252 N. Y. 208, 211; 4 Carmody on New York Practice, p. 3104; 6 Carmody-Wait Cyclopedia of New York Practice, p. 677).
In the composite, I conclude that the probity of the verdict as recorded is unpolluted, and unsullied and unimpaired despite counsel’s aberrancy.
The separate general motions by the defendants Red Star Express Lines of Auburn, Inc., and Louis Colacci to set the verdict aside as to themselves and by the plaintiff to set the verdict aside in favor of the defendants Manhattan Cab Corp. and William Alexander are each denied. The specific motion by the defendants Red Star Express Lines of Auburn, Inc., and Louis Colacci to set the verdict aside as to them because of the misconduct of plaintiff’s counsel preceding and in the course of his summation, when weighed in the balance, has no sufficient support to overcome my conviction as the trial judge that there is no reasonable doubt that the result is the proper product of a trial in which its incidents have been correctly guided under proper controls and the rights of the litigants protected, and accordingly it is denied.